858 F.2d 936
 129 L.R.R.M. (BNA) 2673, 110 Lab.Cas. P 10,822
 RAILWAY LABOR EXECUTIVES ASSOCIATION
v.
PITTSBURGH & LAKE ERIE RAILROAD CO., a Delaware Corp. Pleco,
Inc., a Delaware Corp. S. Henry G. Allyn, Gordon E.
Neuenschwander, G. Gray Garland, Bernard B. Smyth, Beloit
Corp., a Wisconsin Corp., Chicago West Pullman
Transportation Corp., an Illinois Corp., and P & LE Railco,
Inc., an Illinois Corp.
Appeal of RAILWAY LABOR EXECUTIVES ASSOCIATION ("RLEA").
 No. 87-3853.
 United States Court of Appeals,
Third Circuit.
 Argued June 8, 1988.
Decided Oct. 14, 1988.
 
 John O'B. Clarke, Jr., Richard S. Edelman (argued), Highsaw & Mahoney, Washington, D.C., for appellant.
 Richard L. Wyatt, Jr., Ronald M. Johnson (argued), Brett A. Perlman, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., G. Edward Yurcon, Vice President--Law, Pittsburgh & Lake Erie R. Co., Pittsburgh, Pa., for appellees Pittsburgh & Lake Erie R. Co., Pleco, Inc., Henry G. Allyn, Gordon Neuenschwander, Bernard B. Smyth, and Beloit Corp.
 Thomas R. Johnson, Stephen M. Olson, David J. Strasser, Kirkpatrick & Lockhart, Pittsburgh, Pa., for appellees Chicago West Pullman Transp. Corp. and P & LE Railco, Inc.
 Before BECKER, STAPLETON and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 This appeal is the third that we have faced within the past year arising out of challenges by appellant Railway Labor Executives' Association (RLEA) to a proposed sale of assets by appellee Pittsburgh & Lake Erie Railroad Company (P & LE). In Railway Labor Executives' Ass'n. v. Pittsburgh & Lake Erie R.R., 831 F.2d 1231 (3d Cir.1987), petition for cert. filed, 56 U.S.L.W. 3759 (U.S. Mar. 24, 1988) (No. 87-1589), we held that the district court had no jurisdiction to enjoin a strike by RLEA unions because Congress did not intend that the Norris-LaGuardia Act, 29 U.S.C. Secs. 101-15, yield to the revised Interstate Commerce Act (ICA), 49 U.S.C. Secs. 10101-11917. In Railway Labor Executives' Ass'n v. Pittsburgh & Lake Erie R.R., 845 F.2d 420 (3d Cir.1988), petition for cert. filed, 56 U.S.L.W. 3839 (U.S. May 17, 1988) (No. 87-1888), we held that the expedited approval of the proposed sale by the Interstate Commerce Commission (ICC) under the ICA does not relieve P & LE from its duty to bargain under the Railway Labor Act (RLA), 45 U.S.C. Secs. 151-188, over the effects of the proposed sale. In this case, RLEA contends that the proposed sale of assets would violate Pennsylvania's version of the Uniform Fraudulent Conveyance Act (PFCA), Pa.Stat.Ann. tit. 39, Secs. 351-363 (Purdon 1954). We agree with the district court conclusion that it lacked jurisdiction. We will reverse its order of dismissal, however, and remand to the district court with instructions that it in turn remand these proceedings to the state court.I.
 
 
 2
 The factual background to this dispute is fully set out in our prior two opinions; we summarize here only the allegations of the complaint and the procedural history relevant to this appeal. P & LE has been experiencing financial difficulties over the last several years. As a result, P & LE entered into an agreement on July 8, 1987 to sell most of its assets, including its rail lines and operating properties, to P & LE Railco, Incorporated (Railco), a noncarrier, and a wholly owned subsidiary of appellee Chicago West Pullman Transportation Corporation (CWPT). P & LE notified its unions of the proposed sale.
 
 
 3
 RLEA, an unincorporated association of the chief executive officers of nineteen railway labor unions, including the unions that represent P & LE's employees, took several actions to preserve the alleged rights of its members. One of the actions RLEA took was to file this suit in Pennsylvania state court in October, 1987, claiming that the proposed sale of assets would be a fraudulent conveyance in violation of the PFCA and was only the most recent in a continuing series of the transactions which violate that Act. Named as defendants in addition to P & LE, Railco and CWPT, were Pleco, Inc., P & LE's parent, and several stockholders, officers and directors of Pleco. In its complaint, RLEA asserts that the employees are creditors within the meaning of the PFCA because of P & LE's obligations to the employees for accrued but unpaid wages, vacation pay, labor protection pay, life, health and insurance premiums, pension plan premiums, and pending grievance claims. In addition, RLEA asserts that the unions are creditors because of the P & LE's obligations to the unions for union dues. RLEA contends that the proposed sale would be a fraudulent conveyance, inter alia, because the transaction would not involve fair consideration and would render the P & LE insolvent, and because it is an intentional attempt to defraud creditors. RLEA further contends that the proposed sale has been arranged for the benefit of some creditors to the prejudice of employee and other creditors. RLEA seeks a declaration that all of the transactions described in the complaint violate the PFCA, a preliminary and permanent injunction barring distribution of the proceeds of the sale until RLEA's claims are provided for, a receivership to administer and distribute those proceeds, damages arising from the PFCA violations, subordination to RLEA's claims of creditors who were preferred under the fraudulent conveyances, and such other relief as the court may find appropriate.
 
 
 4
 Before answering the complaint, the defendants removed the case to the federal district court and then moved to dismiss on the ground that RLEA's claim was preempted by the RLA and the ICA. RLEA opposed the motion to dismiss and moved to remand the case to the state court. The district court granted P & LE's motion to dismiss and denied RLEA's motion to remand. It found that RLEA's claim involved a "minor dispute" under the RLA and that the only proper forum for resolving this dispute was arbitration culminating, if necessary, in a determination by the National Railway Adjustment Board (NRAB). As a result, the district court held 680 F.Supp. 192 that it and the state court lacked jurisdiction. This appeal was taken from the order of dismissal.[1]
 
 II.
 
 5
 The threshold issue is one of subject matter jurisdiction. There are several avenues of analysis in this setting that might lead to the conclusion that the district court had no jurisdiction. The district court concluded that the RLA made the NRAB the exclusive forum for resolving a dispute of this kind and, accordingly, that it and the state court lacked jurisdiction. Defendants also urge, in the alternative, that the ICA makes the ICC the exclusive forum for resolving a dispute of this kind. Wholly apart from these forum preemption issues, however, given the exclusive reliance of RLEA's state court complaint on state law, the district court may have lacked jurisdiction under well established principles of removal law. More specifically, under the "well pleaded complaint" rule, there is no removal jurisdiction in this case and a remand is required unless it can be said that the RLA or the ICA "completely preempts" RLEA's state cause of action. Although the defendants argued that the doctrine of complete preemption bestowed jurisdiction on the district court, that court did not address the issue.
 
 
 6
 We address the well pleaded complaint rule and the complete preemption doctrine in Section IIA. We conclude that the district court lacked jurisdiction under these applicable principles of removal law. As we explicate in Section IIB, we also conclude that the district court should have addressed the removal issue first and remanded to the state court, leaving the issues of forum preemption for determination by the state court. In Section IIC, we emphasize that our holding is a narrow one and identify the issues that we leave for resolution by the state court. Among those issues is the question of whether the rules of law provided by the PFCA are preempted by federal law. As we shall see, this "ordinary preemption" issue concerning the applicable principles of substantive law is distinct from the "complete preemption" issue discussed in Section IIA and the "forum preemption" issues discussed in Section IIB.
 
 A.
 
 7
 RLEA's complaint relies solely on state law. Under 28 U.S.C. Sec. 1441, only state court actions over which "the district courts of the United States have original jurisdiction, may be removed by the defendant." As the asserted basis of federal jurisdiction in this case is 28 U.S.C. Sec. 1331 ("federal question" jurisdiction), the "well-pleaded complaint rule" applies. In order for a case to be removable under Sec. 1441 and Sec. 1331, the well-pleaded complaint rule requires the federal question be presented on the face of the plaintiff's properly pleaded complaint. See Gully v. First National Bank, 299 U.S. 109, 112-13, 57 S.Ct. 96, 97-98, 81 L.Ed. 70 (1936). In addition, under this rule,
 
 
 8
 a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the complaint, and even if both parties concede that the federal defense is the only question truly at issue.
 
 
 9
 Caterpillar, Inc. v. Williams, --- U.S. ----, 107 S.Ct. 2425, 2426, 96 L.Ed.2d 318 (1987).
 
 
 10
 The Supreme Court, however, has fashioned an "independent corollary," to the well-pleaded complaint rule, known as the "complete preemption doctrine." The complete preemption doctrine holds that "Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). In such cases, "any complaint that comes within the scope of the federal cause of action [created by the federal statute] necessarily 'arises under' federal law," Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983), for purposes of removal based on federal question jurisdiction.
 
 
 11
 The complete preemption doctrine has its roots in Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In Avco, an employer, relying solely on state law, brought suit in a state court to enjoin a union from striking in violation of the "no-strike" clause in the collective bargaining agreement. After the state court issued a temporary injunction, the union removed the case to federal court and the district court dissolved the injunction. The Supreme Court held that the suit was removable because it arose under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185.
 
 
 12
 The Supreme Court first explicitly acknowledged the implications of the Avco holding in Franchise Tax Board. In Franchise Tax Board, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420, a state tax authority, pursuant to state statute, attempted to levy on funds held in trust for construction employees under a vacation benefit plan covered by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1001 et seq. When the fund trustees failed to comply, the tax authority filed suit in state court based on two state law causes of action, and the fund removed to federal court. Before holding that removal was improper, the Supreme Court first considered the argument based on Avco that the state's cause of action was in substance a federal claim. The Court explained that the "necessary ground" of the Avco decision was that the "pre-emptive force of Sec. 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' " Id. at 23, 103 S.Ct. at 2853.
 
 
 13
 The Court declined to apply the complete preemption doctrine to the facts present in Franchise Tax Board, however. First, the Court noted that ERISA creates express causes of action in section 502(a) that might, like section 301, completely preempt any state law cause of action coming within their scope. The tax authority's claims, however, did not fall within the scope of these causes of action because section 502(a) "neither creates nor expressly denies any cause of action in favor of state governments, to enforce tax levies or for any other purpose. It does not purport to reach every question relating to plans covered by ERISA." Id. at 25, 103 S.Ct. at 2854. The Court thus found significant the fact that "ERISA does not provide an alternative cause of action in favor of the State to enforce its rights, while Sec. 301 expressly supplied the plaintiff in Avco with a federal cause of action to replace its pre-empted state contract claim." Id. at 26, 103 S.Ct. at 2855.
 
 
 14
 Second, the Court found that "Congress did not intend to pre-empt entirely every state cause of action relating to [plans covered by ERISA]," id. at 25, 103 S.Ct. at 2854, because ERISA contains at least one provision that expressly preserves the effect of state laws in certain areas. Third, the Court stressed that "the State's right to enforce its tax levies is not of central concern to the federal statute." Id. at 25-26, 103 S.Ct. at 2854-55. Finally, the Court added that even though the enforcement of the state's tax levy might eventually be found to be preempted by ERISA, the state's cause of action to enforce the levy was not "completely" preempted. Id. at 26, 103 S.Ct. at 2855.
 
 
 15
 The Court returned to the application of the complete preemption doctrine to ERISA in Metropolitan Life, in which the plaintiffs filed state common law causes of action in a state court asserting improper processing of a claim for benefits under a plan regulated by ERISA. The Court framed the issue as
 
 
 16
 whether these state common law claims are not only pre-empted by ERISA, but also displaced by ERISA's civil enforcement provision, Sec. 502(a)(1)(B), 29 U.S.C. Sec. 1132(a)(1)(B), to the extent that complaints filed in state courts purporting to plead such state common law causes of action are removable to federal court under 28 U.S.C. Sec. 1441(b).
 
 
 17
 107 S.Ct. at 1544-45. Deciding the question specifically reserved inFranchise Tax Board, the Court held that state law causes of action that came within the scope of section 502(a) of ERISA were removable.
 
 
 18
 At the same time, however, the Court made clear its determination to limit the application of the complete preemption doctrine. Even in the context of a statute like ERISA with its "unique preemptive force" and its civil enforcement provision creating a federal cause of action "that lies at the heart of the statute," the Court declared itself "reluctant to find that extraordinary pre-emptive power" necessary for the complete preemption doctrine to apply "[i]n the absence of explicit direction from Congress." Id. at 1547. This reluctance was overcome in Metropolitan Life only because Congress had manifested a "clear intention to make Sec. 502(a)(1)(B) suits brought by [ERISA] participants or beneficiaries federal questions for purposes of federal court jurisdiction in like manner as Sec. 301 of the LMRA." Id. at 1547. The Court found such an explicit intention both from the fact that ERISA's civil enforcement provisions closely parallel those of Sec. 301 of the LMRA and from the following "specific reference to the Avco rule" in the ERISA Conference Report:
 
 
 19
 All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947. H.R.Conf.Rep. No. 93-1280, p. 327 (1974)
 
 
 20
 Id. at 1547 (emphasis in original).
 
 The Court held as follows:
 
 21
 Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of Sec. 502(a) removable to federal court. Since we have found Taylor's cause of action to be within the scope of Sec. 502(a), we must honor that intent whether pre-emption was obvious or not at the time this suit was filed.
 
 
 22
 Accordingly, this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress.
 
 
 23
 Id. at 1548. Justice Brennan, joined by Justice Marshall, embraced the opinion of the Court but wrote separately to emphasize that the relevant congressional intent was not an intent that the statute should displace state law, but rather an intent that claims purportedly based on state law be removable:
 
 
 24
 While I join the Court's opinion, I note that our decision should not be interpreted as adopting a broad rule that any defense premised on congressional intent to preempt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has clearly manifested an intent to make causes of action ... removable to federal court." Ibid (emphasis added). In future cases involving other statutes, the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court.
 
 
 25
 Id. at 1548 (Brennan, J., concurring) (emphasis in original).
 
 
 26
 In its most recent complete preemption case, Caterpillar, Inc. v. Williams, the Court examined the scope of the doctrine as applied to Section 301 of the LMRA. In Caterpillar, an employer downgraded certain employees from managerial and salaried positions not covered by a collective bargaining agreement to hourly positions covered by the agreement. The employees sued in state court for breach of their individual employment contracts, and the employer removed to federal court. The Court held that the complete preemption doctrine did not apply because the rights asserted by the employees were neither created by nor "substantially dependent upon interpretation of," 107 S.Ct. at 2431, the collective bargaining agreement. The Court also emphasized that complete preemption is a distinct concept from ordinary preemption: "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court." Id. at 2432.
 
 
 27
 Although, as Justice Brennan observed in Franchise Tax, the rules in this area "involve ... perhaps more history than logic," 463 U.S. at 3, 103 S.Ct. at 2843, we believe analysis of the case law yields a number of clear teachings. The well pleaded complaint rule is alive and well and a plaintiff "may [in most instances] avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, 107 S.Ct. at 2429. This remains true whether or not the state law exclusively relied on is preempted by federal law. State courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary. Nevertheless, there is a very limited area in which a federal court in a case removed from a state court is authorized to recharacterize what purports to be a state law claim as a claim arising under a federal statute. In order to determine whether it possesses this authority to recharacterize, the federal court must first ask whether the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls. Franchise Tax, 463 U.S. at 24, 26, 103 S.Ct. at 2854-55. If the federal statute creates no federal cause of action vindicating the same interest the plaintiff's state cause of action seeks to vindicate,[2] recharacterization as a federal claim is not possible and there is no claim arising under federal law to be removed and litigated in the federal court.
 
 
 28
 Even if there is a civil enforcement provision and the plaintiff's state claim falls within it, the federal court must further inquire whether there is a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law. See Metropolitan Life, 107 S.Ct. at 1547-48. If there is no affirmative indication of the requisite Congressional intent to permit removal, there can be no "complete preemption." If there is no such intent, the district court need not and should not address the issue of whether the state substantive law relied upon by the plaintiff has been preempted by federal law. That issue must be left for determination by the state court on remand.[3]
 
 
 29
 With this analysis in mind, we turn first to the RLA. The defendants have pointed to no federal cause of action created by the RLA which would have been referred to in RLEA's complaint if it had been "well pleaded." Since RLEA's state claim cannot be recharacterized as a comparable claim arising under the RLA, we conclude that the doctrine of complete claim preemption does not operate to permit removal in the situation before us. In addition, as one would expect in light of Congress' failure to create in the RLA a civil enforcement action comparable to RLEA's claim under the PFCA, we find no evidence in the RLA or its legislative history of a Congressional intent to permit recharacterization and removal of what purports to be a state claim.
 
 
 30
 The ICA, like the RLA, contains no civil enforcement provisions creating a federal cause of action in favor of one in the position of RLEA or the employee creditors. Likewise, we find no affirmative evidence in the ICA or its legislative history that Congress intended state claims of this kind to be removable. Indeed, we have found no case or commentary even suggesting that there may be complete preemption under the ICA. For these reasons, we hold that the district court is without authority to recharacterize the state cause of action pleaded by RLEA as a federal cause of action arising under the ICA.
 
 
 31
 In summary, it is clear from the Supreme Court case law that the doctrine of complete preemption operates in a very narrow area. In particular, it has never been applied in a situation where there was no federal cause of action comparable to the state cause of action asserted by the plaintiff. Moreover, the Supreme Court has indicated that it should not be applied unless there is affirmative evidence of a Congressional intent to permit removal despite the plaintiff's exclusive reliance on state law. Because there is no RLA or ICA cause of action within the scope of which RLEA's state claim falls and because we do not find the requisite Congressional intent, we hold that there is no removal jurisdiction in this case.
 
 B.
 
 32
 When Congress intends a particular forum to have exclusive jurisdiction to determine the rights of the parties in a particular situation, that policy decision deprives other fora of subject matter jurisdiction. This doctrine of "forum preemption" implements Congressional determinations that development of the substantive law in a particular area should be left to a particular administrative agency created for that purpose. Mack Trucks, Inc. v. International Union, U.A.W., 856 F.2d 579 (3d Cir.1988). The forum preemption doctrine was applied most recently in International Longshoremen's v. Davis, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986). The Supreme Court there held that where conduct challenged in a state court suit is arguably an unfair labor practice within the scope of Sec. 8 of the NLRA, the NLRB has exclusive jurisdiction and the state court has no subject matter jurisdiction to hear the claim even if it is purportedly based solely on state law.
 
 
 33
 The parties before us agree that the NRAB has exclusive jurisdiction under Section 153 First(i) of the RLA to resolve "minor disputes"--that is disputes involving the enforcement or interpretation of a collective bargaining agreement between a railroad and the bargaining representative of its employees. As the district court noted, a number of courts of appeals have held that the exclusive jurisdiction of the NRAB deprives state courts of subject matter jurisdiction to hear such disputes. Leu v. Norfolk & Western Ry. Co., 820 F.2d 825, 828 (7th Cir.1987). See also Miller v. Norfolk & Western Ry. Co., 834 F.2d 556 (6th Cir.1987); Int'l Ass'n of Machinist and Aerospace Workers v. Alaska Airlines, Inc., 813 F.2d 1038 (9th Cir.1987). The parties differ, however, on whether RLEA's complaint calls for resolution of a "minor dispute."
 
 
 34
 The defendants argue that this is a "minor dispute" because RLEA must rely upon the collective bargaining agreement in order to establish its status and that of its members as creditors of P & LE. In response, RLEA insists that the state court may grant it relief under the PFCA without interpreting or applying the collective bargaining agreement because it is the existence of claims against a debtor alone that gives rise to rights under that Act. The district court sided with the defendants on this issue concluding that "before a determination could be made as to whether any of the transactions of which plaintiff complains constitute fraudulent conveyances impinging upon plaintiff's members' rights under the collective bargaining agreement it first would be necessary to ascertain the nature of these rights, i.e., their source and legal validity." 151a. As a result of its conclusion that the state court was preempted as a forum, the district court dismissed the case.
 
 
 35
 We hold that the district court erred by dismissing the case rather than remanding it to the state court. Where, as here, it is clear that no removal jurisdiction exists because there is neither diversity nor a federal question presented by the plaintiff's complaint, a district court should remand the case to the state court without addressing other issues. If the plaintiff has relied solely on state law in an area where there is no complete preemption, under the well pleaded complaint rule he or she is normally entitled to have a state court adjudication of all issues. Thus, just as "ordinary preemption" issues are to be left to the state court where there is no complete preemption, we believe "forum preemption" issues as well must be left for determinations after remand. It follows that the district court should have addressed the complete preemption issue first and remanded the case.
 
 C.
 
 36
 We hold only that there is no removal jurisdiction in this case and that it should be remanded to the state court rather than dismissed. Like the district court, we have no occasion to reach the issue of whether the ICA confers exclusive jurisdiction on the ICC to resolve disputes of this kind and thereby deprives the state court of jurisdiction to hear this case. Similarly, we do not rule out the possibility that forum preemption under the RLA may ultimately affect the litigation of this case.[4] Finally, we stress that we have expressed no opinion on whether the PFCA is preempted by the RLA or the ICA or whether the relief requested by RLEA would impermissibly conflict with actions heretofore taken by the ICC in the Sec. 10505[5] proceedings. Accordingly, the defendants are free to raise any of these unadjudicated issues before the state court.
 
 III.
 
 37
 We conclude that the district court was without subject matter jurisdiction and that a remand to the state court was the only appropriate course of action. Accordingly, we will reverse the order of the district court dismissing the complaint and remand this case to that court. The district court will, in turn, remand the case to the court whence it came.
 
 
 
 [1]
 Since the filing of this appeal, it has become clear that the proposed sale to Railco will not take place. Although at the time of oral argument, litigation was pending in federal district court in Ohio between P & LE and Chicago West Pullman concerning whether the agreement of sale was still binding, we were subsequently informed that by virtue of a settlement agreement between these parties the sales agreement has no further force or effect. RLEA had previously moved to dismiss this case on the ground of mootness. In light of our holding that the district court had no subject matter jurisdiction, we do not reach the mootness issue. RLEA is of course free to renew its motion before the state court. See United Jersey Banks v. Parell, 783 F.2d 360, 370 n. 12 (3d Cir.1986)
 
 
 [2]
 The issue is not whether the federal law provides the same remedy available to the plaintiff under state law, but rather whether there is some vindication for the same interest. See Avco, 390 U.S. at 561, 88 S.Ct. at 1237; Caterpillar, 107 S.Ct. at 2429, n. 4
 
 
 [3]
 If the district court determines that there is complete preemption, it necessarily will have determined that the federal cause of action has displaced the state one and that the case must go forward in the federal court as a case arising under the federal statute. The district court then should proceed to litigate the federal cause of action just as it would have if the case had originally been filed in the district court
 
 
 [4]
 Resolution of the forum preemption issue by any court may be premature at this point. As we have noted, the defendants argue that this case involves a "minor dispute." Based on the present record, however, P & LE has been unable to identify any dispute between the parties regarding the interpretation of the collective bargaining agreement. RLEA has not sued for breach of contract. Indeed, RLEA neither alleges that P & LE breached the collective bargaining agreement nor that P & LE has denied that it has obligations commensurate with the rights which the employees and unions claim thereunder. Rather, what RLEA and its members are concerned about is bankruptcy and their ability to collect on claims which are not currently disputed in the record. In short, on the present record at least, there would appear to be no "minor dispute" for the NRAB to resolve because there is no dispute between the parties concerning the agreement. Knowing whether a dispute concerning the collective bargaining agreement exists and if so what it is, would seem a helpful predicate to a determination of whether resolution of the state law issues presented by RLEA's claim under the PFCA will require a determination of a "minor dispute" that should be left to the NRAB
 By suggesting that further development of the record may be helpful, we intimate no view regarding the propriety of interim relief under the PFCA pending that development or pending resolution of a "minor dispute" by the NRAB. It is conceivable to us that Pennsylvania law may afford a claimholder in RLEA's position interim relief under the PFCA. Cf. Temtex Products, Inc. v. Kramer, 330 Pa.Super. 183, 479 A.2d 500, 507 (1984) (preliminary injunctive relief available to prevent dissipation of assets from which plaintiff could collect any damage award that might later be made for a civil conspiracy to violate the PFCA); American Optical Co. v. Philadelphia Electric Company, 228 F.Supp. 293 (E.D.Pa.1964) (merit of a creditor's underlying claim can be litigated in the fraudulent conveyance action or in another proceeding at the discretion of the judge in the fraudulent conveyance proceeding). Moreover, if such interim relief is available under Pennsylvania law, it is also conceivable to us that it could be afforded without impinging on the prerogatives of the NRAB.
 
 
 [5]
 Under 49 U.S.C. Sec. 10505(a) an acquisition of a railway by a non-carrier may be exempted from Sec. 10901 regulation, if the Commission finds that such regulation is not necessary to carry out the transportation policies of 49 U.S.C. Sec. 10101a and is either of a limited scope or is not needed to protect shippers from abuse of market power. See Railway Executives' Ass'n. v. Pittsburgh & Lake Erie R.R., 845 F.2d at 425
 In September, 1987, the ICC approved Railco's and CWPT's Sec. 10505(a) petitions for exemption from regulation under Sec. 10901. Finance Dockets 31121 and 31122. Concurrently, the ICC denied RLEA's petition for rejection of the exemption filing and request to stay the consummation of the sale. Finance Docket 31121. RLEA then filed a "Petition for Revocation of Exemptions," pursuant to 49 U.S.C. Sec. 10505(d), in which RLEA argued that the sale to Railco was a fraudulent conveyance designed to benefit selected creditors to the disadvantage of other creditors, including the employees. The ICC affirmed its prior decision. Finance Dockets 31121, 31122. Defendants contend that RLEA's PFCA suit is preempted by the ICC's actions under the above provisions of the ICA.