**STATE OF NEW JERSEY, Plaintiff,**

v.

**The CITY OF WILDWOOD, a municipal corporation, and The Board of Commissioners of the City of Wildwood, Defendants.**

**Civil Action No. 98–3933.**

United States District Court,
D. New Jersey.

Oct. 6, 1998.

---

Peter Verniero, Atty. Gen. of State of New Jersey, Mark J. Fleming, Asst. Atty. Gen., William C. Brown, Deputy Atty. Gen., Trenton, NJ, for Plaintiff, State of N.J.

Marcus H. Karavan, Marcus H. Karavan, P.C., Wildwood, NJ, for Defendants, City of Wildwood and Bd. of Com'rs of City of Wildwood.

## OPINION

ORLOFSKY, District Judge.

This case was originally filed in the Superior Court of New Jersey, Cape May County, Chancery Division, by plaintiff, the State of New Jersey (the "State") against defendants, the City of Wildwood (the "City") and the Board of Commissioners of the City of Wildwood (the "Board," collectively "Wildwood"). Wildwood removed the case to this court contending that federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1367.

The State filed this action in the Superior Court of New Jersey, Cape May County, Chancery Division, alleging that Wildwood violated various New Jersey statutes that

limit the authority of a municipality to alter its boundaries, that require a municipality to follow specific procedures for the transfer of real property, and that oblige a municipality to give the public notice of proposed official actions. Wildwood filed a notice of removal to this Court, asserting that resolution of the State's claims involved substantial questions of federal law. Thereafter, the State filed a motion to remand this case to the Superior Court of New Jersey, Cape May County, Chancery Division. For the reasons set forth below, I shall grant the State's motion to remand pursuant to 28 U.S.C. § 1447(c), because this Court lacks subject matter jurisdiction.

## I. BACKGROUND

Notwithstanding the heated hyperbole of the parties, the State's motion to remand presents for resolution a relatively narrow issue of law. It also represents the latest in a series of confrontations between the State and the City of Wildwood over whether the Delaware Tribe of Western Oklahoma will be allowed to build a casino in Wildwood. The Tribe has also filed an action pending in this Court against the City in which the State has intervened, *Delaware Tribe of Western Oklahoma v. City of Wildwood,* Civil Action 98–3692(SMO), alleging a violation of the Non–Intercourse Act of 1790. To understand what may fairly be described as the "Wildwood Casino War," I set forth below in some detail the tortuous procedural history of this case.

The City of Wildwood is a municipal corporation, incorporated, existing and subject to the Constitution and laws of the State of New Jersey. *See* Defendants' Notice of Removal (filed August 20, 1998) ("Defs.Notice"), Exhibit A (Plaintiff's Verified Complaint, dated August 10, 1998), ¶ 2. The Board is the

governing body of the City of Wildwood. *See id.* Exh. A, ¶ 3.

The Delaware Tribe of Western Oklahoma (the "Tribe") filed a complaint against Wildwood in the Superior Court of New Jersey, Cape May County, Chancery Division, Docket No. C–18–98, alleging a violation of the Non–Intercourse Act of 1790, 25 U.S.C. § 177,[1] and seeking the return of its aboriginal lands allegedly located within boundaries of the City. *See* Defendants' Brief in Opposition to Motion to Remand ("Def.Brief"), Exh. A. (Letter Glenn D. McCogney, Esq. to Marcus H. Karavan, Esq., dated July 14, 1998). The State filed a motion to intervene in the suit because it believed that the litigation was "the first step in attempting to bring an Indian Gaming Casino to Wildwood." *See* Affidavit of William C. Brown, Esq. ("Brown Aff."), ¶ 2. Believing it could not receive a fair resolution of its claim in state court if the State were permitted to intervene, the Tribe, with Wildwood's consent, withdrew the lawsuit prior to any decision on the State's motion to intervene. *See id.* ¶ 3; *see also* Def. Brief, Exh. A.

After the state court action had been withdrawn, the Office of the Attorney General of the State of New Jersey, informed Wildwood's solicitor, Marcus H. Karavan, Esq. ("Karavan"), that the State had a "continued interest in any issue related to the Delaware Tribe or Indian Gaming in Wildwood." Brown Aff., ¶ 4. In the months leading up to July, 1998, the State made several requests to the City's Clerk's Office for any new information regarding the Tribe's interest in municipal property. *See id.* On July 24, 1998, Karavan left a telephone message for Assistant Attorney General, Mark J. Fleming ("Fleming"), stating "that 'there may be some activity' at the July 27, 1998 meeting of the Board of Commissioners." Brown Aff., ¶ 5, Exh. B. Fleming and Deputy Attorney

---

**1.** The Non-Intercourse Act provides in relevant part:

No purchase, grant, lease or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution [of the United States].

25 U.S.C. § 177 (1998). The Tribe alleged in its state court complaint that the 1832 conveyance of tribal land to the State of New Jersey was invalid because "[t]he United States government has never consented to the alienation of the tribal land...." *See* Brown Aff., Exh. A (Tribe State Complaint, filed March 19, 1998), ¶ 16.

General, William H. Brown ("Brown"), attended the Board meeting. *See id.* ¶ 7.

At the July 27, 1998, meeting, the Board "approved, on first reading," Municipal Ordinance 472–98. *See* Defs. Notice, Exh. A, ¶ 4. The ordinance approved the transfer of a municipally owned parking lot to the Tribe in return for $1.00 and a "release of any and all claims which [the Tribe] may have against [Wildwood], including, but not limited to, claims relative to any violations of the Indian Non-intercourse Act [sic] of 1790, 25 U.S.C. § 177." *See id.* During the public comment portion of the meeting, Fleming informed the Board that approval of the ordinance was "beyond the power of the Commissioners and [was] unlawful." Brown Aff., ¶ 11.

At the conclusion of the meeting, Karavan provided Fleming with a copy of a letter from the Tribe's counsel to Karavan. *See id.* ¶ 12. The letter, dated July 14, 1998, informed Wildwood that the Tribe intended to pursue its claim in federal court "unless the City transfer[red] to the Tribe the land which had been promised by prior agreement between the parties."[2] Def. Brief, Exh. A. Enclosed with the letter was a copy of a federal complaint alleging the same claim which formed the subject matter of the state court action, namely, an alleged violation of the Non–Intercourse Act of 1790. *See* Brown Aff., Exh. F.

On August 7, 1998, the Tribe filed a complaint in this Court against the City of Wildwood, asserting a claim based upon an alleged violation of the Non–Intercourse Act of 1790. *See Delaware Tribe of Western Oklahoma v. City of Wildwood,* (*"Delaware Tribe"*) Civil Action 98–3692(SMO) (Complaint, filed August 7, 1998). On August 20, 1998, the State filed an unopposed motion to intervene as a defendant in the Tribe's federal suit against the City. *See id.* (Notice of Motion to Intervene, filed August 20, 1998). On August 31, 1998, the Court granted the State's motion for leave to intervene. *See id.*

(Order of the Court, entered August 31, 1998).

On August 10, 1998, the State filed a complaint in the Superior Court of New Jersey, Cape May County, Chancery Division, seeking declaratory and injunctive relief. *See* Defs. Notice, Exh. A. The State's complaint asserts three claims. First, the State alleges that only the State Legislature can alter the boundaries of a municipality, and any attempt to do so is beyond Wildwood's authority. *See id.,* Exh. A (Count I). Second, the State alleges that the transfer of municipal land to the Tribe is a "sale," and as such, subject to the Local Lands and Buildings Law, N.J. Stat. Ann. § 40A:12–1 *et seq.,* which requires sale by public auction. *See id.,* Exh. A (Count II). Finally, the State alleges that Wildwood failed to give the public notice of the official action to be taken, regarding the Tribe's claim, at the July 27, 1998, Board meeting, in violation of the Open Public Meetings Act, N.J. Stat. Ann. § 10:4–6 *et seq. See id.,* Exh. A (Count III).

On August 20, 1998, Wildwood filed its Notice of Removal in this Court. *See* Defs. Notice. In its Notice of Removal, Wildwood contends that the jurisdictional basis for removal is this Court's federal question jurisdiction. *See* Defs. Notice, ¶¶ 9–11. Wildwood further states that the State's claims are related to the claim set forth in the Tribe's federal complaint, already pending in this Court. *See id.; Delaware Tribe,* Civil Action 98–3692(SMO). Wildwood also argues that "[t]he State's right to obtain relief in this case is ... contingent upon the resolution of the [Tribe's] right to recover possession of its aboriginal land under the Non[-I]ntercourse Act[; and that] [t]his is a substantial question of federal law." Defs. Notice, ¶ 9. Wildwood further argues that resolution of the Tribe's federal law claims is a prerequisite and essential element to the resolution of the State's claims, and that whether the state court can enjoin Wildwood from

---

2. The record contains no evidence of a "prior agreement" between the Tribe and Wildwood. Newspaper accounts, however, report that the City and the Tribe entered into an agreement in September, 1995, wherein the City would transfer to the Tribe a downtown parking lot, upon which the Tribe would erect a casino. *See* Iver Peterson, *Plan for Tribal Casino Backfires On a Fading Jersey Shore Town,* N.Y. Times, Sept. 20, 1998, at 1. Both the State and the Bureau of Indian Affairs opposed the agreement. *See id.* I intimate no view as to the accuracy of this newspaper article.

settling a federal lawsuit is a question of federal law. *See id.,* ¶¶ 9–11. In addition, Wildwood contends that this Court should treat this case as consolidated with *Delaware Tribe of Western Oklahoma v. City of Wildwood,* Civil Action 98–3692(SMO), and apply 28 U.S.C. § 1441(c) to "the extent that this case raises claims that will be resolved solely by reference[ ] to state law." Defs. Notice, ¶ 12.

On September 3, 1998, the State filed a motion to remand this case to the Superior Court of New Jersey, Cape May County, Chancery Division.[3] *See* Plaintiff's Notice of Motion to Remand (filed September 3, 1998). In support of its motion to remand, the State contends that its complaint raises only narrow issues of state law, involving the relationship between the State and a municipality created pursuant to state law. *See* Plaintiff's Brief in Support of Motion to Remand ("Pl.Brief") at 8–16. In addition, the State argues that removal is improper because this Court lacks subject matter jurisdiction to resolve these narrow issues of state law. *See id.*

## II. LEGAL STANDARD FOR REMOVAL

■ Under 28 U.S.C. § 1441(a),[4] a defendant may remove to federal court any case over which the federal court would have had original jurisdiction. *See* 28 U.S.C. § 1441(a) (1998); *see also Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Gateway 2000, Inc. v. Cyrix Corp.,* 942 F.Supp. 985, 989–90 (D.N.J.1996) (Lechner, J.). Federal district courts are courts of limited jurisdiction, with original jurisdiction over two categories of disputes: (1) cases involving

diversity jurisdiction pursuant to 28 U.S.C. § 1332, encompassing, for the most part, those disputes between citizens of different states involving the requisite amount in controversy; and (2) cases involving federal question jurisdiction pursuant to 28 U.S.C. § 1331, encompassing those disputes "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331; *see Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425; *Gateway 2000,* 942 F.Supp. at 989. Since this dispute is between the State of New Jersey and a municipal corporation located in and organized under the laws of New Jersey, removal to this Court is only proper if the dispute "arises under the Constitution, laws or treaties of the United States." *See Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425; *Gateway 2000,* 942 F.Supp. at 989.

■ In the interests of what has been described as "Our Federalism," *see e.g., Younger v. Harris,* 401 U.S. 37, 44–45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and comity, federal courts construe removal statutes narrowly, "confin[ing] their own jurisdiction ... [and] resolving any doubts in favor of remand." *Gateway 2000,* 942 F.Supp. at 989 (quoting *Finley v. United States,* 490 U.S. 545, 552–553, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)) (internal quotations and citations omitted). Accordingly, in deciding a motion to remand, the removing party has the burden of showing the propriety of removal by establishing the existence of federal subject matter jurisdiction. *See Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 359 (3d Cir. 1995); *Gateway 2000,* 942 F.Supp. at 989.

■ Whether a claim "arises under" federal law, thereby investing a district court with federal question jurisdiction pursuant to 28 U.S.C. § 1331, depends upon application of the well-pleaded complaint rule. *See Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425; *see*

---

3. The State actually filed its motion seeking alternative relief: (1) a motion to remand to the state court; or in the alternative, (2) a motion for a preliminary injunction preventing Wildwood from transferring the parking lot to the Tribe. *See* Plaintiff's Notice of Motion to Remand (filed September 3, 1998). For the reasons set forth in Section III, the State's motion for a preliminary injunction is now moot.

4. Section 1441(a) provides:

Except as otherwise provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (1998).

*also* 16 *Moore's Federal Practice,* § 107.14(3)(a)(iii) (Matthew Bender 3d ed.). The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* (citing *Gully v. First National Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). "The rule makes the plaintiff the master of the claim[, and thereby, the plaintiff] may avoid federal jurisdiction by exclusive reliance on state law." *See Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425 (footnote omitted). Even if the facts in plaintiff's complaint could establish a federal cause of action, the plaintiff's choice to proceed on purely state-law grounds in state court must be respected. *See Gateway 2000,* 942 F.Supp. at 990 (citing *Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 840–41, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989) *and United Jersey Banks v. Parell,* 783 F.2d 360, 368 (3d Cir. 1986)). Furthermore, the existence of a federal defense to plaintiff's claims is insufficient to confer federal question jurisdiction and defeat a motion to remand. *See Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. 2841; *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Gateway 2000,* 942 F.Supp. at 990.

 The well-pleaded complaint rule is subject to two narrow exceptions. *See United Jersey Banks,* 783 F.2d at 366. Under these exceptions, "federal jurisdiction could be available even though plaintiff based its claim in state court on state law: (1) when it appears that some substantial, disputed question of federal law is a necessary element of [the state claim;] . . . or (2) when it appears that plaintiff's claim is *really* one of federal law." *Id.* (quoting *Franchise Tax Bd.,* 463 U.S. at 13, 103 S.Ct. 2841) (internal quotations omitted, emphasis in original). In cases falling under the first exception, the "substantial, disputed question of federal law" must be decided as part of the resolution of the state claim. The mere existence of a disputed issue of federal law is not enough, the disputed question must be "a necessary element of one of the well-pleaded state claims." *United Jersey Banks,* 783 F.2d at 366. Thus, the first exception does not expand federal question jurisdiction;

rather, it ensures that federal question jurisdiction actually exists. *See id.* (discussing how the first exception is a reaffirmance of the traditional well-pleaded complaint rule).

 The second exception, where the state claim is "really" one of federal law, is known as the "complete preemption" doctrine. *See Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 310–11 (3d Cir.1994). A state cause of action "is *really* a federal cause of action which may be removed to federal court if the 'federal cause of action completely preempts . . . [the] state cause of action.'" *See id.* (alteration and emphasis in original) (quoting *Franchise Tax Bd.,* 463 U.S. at 24, 103 S.Ct. 2841). Complete preemption exists where Congress has evinced a powerful intent to entirely displace state causes of action. *See Gateway 2000,* 942 F.Supp. at 990 (citing *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R.,* 858 F.2d 936, 941 (3d Cir.1988)). Where a plaintiff seeks to proceed in state court on state common law causes of action subject to complete preemption, the matter is removable to federal court. *See id.* In such cases, "any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd.,* 463 U.S. 1, 103 S.Ct. 2841; *see also Goepel,* 36 F.3d at 311; *Railway Labor Executives,* 858 F.2d at 939.

The United States Supreme Court has recognized complete preemption in only two categories of cases: (1) where the plaintiff's claim falls within the scope of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; or (2) the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1144. *See Goepel,* 36 F.3d at 311 (citing *Avco v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (applying complete preemption to LMRA), *and Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (applying complete preemption to ERISA)).

 In cases involving federal statutes other than the LMRA or ERISA, the Third Circuit has developed a two-step analysis for determining whether the complete preemp-

**402**

tion doctrine applies. *See Goepel*, 36 F.3d at 311. First, a district court must determine if the federal statute at issue "contains civil enforcement provisions within the scope of which the plaintiff's state claim falls." *See Railway Labor Executives*, 858 F.2d at 942 (citing *Franchise Tax Bd.*, 463 U.S. at 24, 26, 103 S.Ct. 2841); *see also Gateway 2000*, 942 F.Supp. at 991. Second, a district court must determine whether Congress expressed an "intention to permit removal despite the plaintiff's reliance on state law." *Goepel*, 36 F.3d at 311 (quoting *Railway Labor Executives*, 858 F.2d at 942 (citing *Metropolitan Life*, 481 U.S. at 64–66, 107 S.Ct. 1542)).

▇▇ Consistent with the principle of strict construction of removal statutes, the "complete preemption" exception is applied with circumspection, mindful that the exception could "abrogate the rule that a plaintiff is master of ... [the] complaint." *United Jersey Banks*, 783 F.2d at 368 (discussing the "artful pleading" exception); *Goepel*, 36 F.3d at 310 n. 5 (stating that complete preemption is the "same principle [which] has been referred to elsewhere as the 'artful pleading' doctrine ...."); *see also* 15 *Moore's Federal Practice*, § 103.43 n. 3. Therefore, it is necessary to distinguish complete preemption from ordinary preemption. *See Goepel*, 36 F.3d at 310–11; *Railway Labor Executives*, 858 F.2d at 941. Under ordinary preemption, even if the state law upon which the plaintiff exclusively relies has been preempted by federal law, removal is not proper because the general rule of the well-pleaded complaint doctrine applies: a plaintiff may avoid federal jurisdiction by exclusive reliance on state law. *See Railway Labor Executives*, 858 F.2d at 941–42. This outcome is not as counterintuitive as it first appears. In cases involving issues of ordinary preemption, the "[s]tate courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before

them, absent a Congressional intent to the contrary." *Id.* Consequently, complete preemption only exists in a narrow subset of preemption cases, where the federal statute preempting state law evinces a Congressional intent "to permit removal despite the plaintiff's reliance on state law." *Goepel*, 36 F.3d at 311; *see also Railway Labor Executives*, 858 F.2d at 942.

## III. DISCUSSION

The State seeks remand of this action to the state court on the basis that this Court lacks subject matter jurisdiction. *See* Pl. Brief at 8. Wildwood contends that the State's claims require resolution of a thorny issue of federal law, namely, whether the Tribe has a cognizable property interest in municipal lands as a result of the alleged violation of a federal statute, the Non–Intercourse Act of 1790, which occurred 166 years ago. *See* Defs. Notice, ¶¶ 9–10. Wildwood argues that the State's complaint seeks relief which, if obtained, would deprive the Tribe of its asserted right to occupy aboriginal lands. *See id.*, ¶ 10. Wildwood further argues that any order obtained in state court preventing the transfer of the parking lot, and thereby, preventing settlement of the controversy between the City and the Tribe would be an invocation of state law to defeat the Tribe's right to its aboriginal lands in violation of federal law, particularly *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).[5]

▇▇ For the reasons set forth below, I hold that the "substantial question" of federal law alluded to by Wildwood does not form a necessary element of the State's claims. In addition, I hold that the application of the well-pleaded complaint doctrine compels the conclusion that the State's complaint alleges only state law claims. Therefore, because this Court lacks subject matter jurisdiction, the case must be remanded to the Superior

---

5. Wildwood cites *Oneida Indian Nation* for the proposition that "state law cannot be invoked to limit or otherwise defeat a [Native–American tribe's] right to occupy land granted by the United States." Defs. Notice, ¶ 10; *see also Oneida Indian Nation*, 414 U.S. at 674, 94 S.Ct. 772. As discussed in detail in Section III.A, the State's claims center on Wildwood's authority to cede municipal property to the Tribe. The State's complaint does not seek to divest the Tribe of any alleged rights in the municipal property based upon federal law. *See* Section III.A, *infra*. Therefore, Wildwood's reliance upon the *Oneida Indian Nation* case is misplaced.

Court of New Jersey, Cape May County, Chancery Division, from whence it came.

### A. The State's Complaint Raises Issues of State Law Only

The State's complaint asserts three causes of action against Wildwood. Count I alleges that Wildwood lacked the authority to alter its boundaries by approving Municipal Ordinance 472–98 and cede the parking lot to the Tribe. *See* Defs. Notice, Exh. A (Count I). Count II alleges that the proposed transfer of the parking lot to the Tribe is a "sale" of municipal property requiring a public auction. *See id.*, Exh. A (Count II); *see also* N.J. Stat. Ann. § 40A:12–1 *et seq.* Count III alleges that Wildwood failed to give adequate notice to the public of the official action to be taken regarding the Tribe's claim to the parking lot, in violation of the New Jersey Open Public Meetings Act. *See* Defs. Notice, Exh. A (Count III); *see also* N.J. Stat. Ann. 10:4–6 *et seq.* In essence, the State's complaint alleges that the actions taken by Wildwood to settle the Tribe's claims by transferring the municipal parking lot were improper, unlawful and ultra vires, under the New Jersey statutes that regulate the scope of a municipality's authority.

The State's complaint does, however, make reference to federal law. In particular, the complaint refers to the Non–Intercourse Act of 1790, 25 U.S.C. § 177. *See* Defs, Notice, Exh. A, ¶¶ 4, 11. Wildwood argues that any court considering the State's claims will necessarily have to decide whether the Tribe has an interest in the parking lot under this federal statute. A careful reading of the State's complaint, however, reveals that Wildwood misconstrues the essential nature of the State's claims.

The citation to the Non–Intercourse Act in the State's complaint is unrelated to the State's claims against Wildwood. The State's complaint alleges, in relevant part:

4. On July 27, 1998, defendant Wildwood Board of Commissioners approved, on first reading, Wildwood Municipal Ordinance 472–98 which purports to transfer to the Delaware Tribe of Western Oklahoma, [the municipal parking lot] ... in consideration of the sum of One Dollar ($1.00) and the release of any and all claims which the Delaware Tribe of Western Oklahoma may have against the defendant Wildwood, including, but not limited to, claims relative to any violations of the Indian Non-intercourse [sic] Act of 1790, 25 U.S.C. § 177.

. . . . .

8. [Wildwood's] Mayor[,] Fred Wager and other municipal officials ... have stated publicly that the purpose of the within land sale and transfer is to enable ... Delaware Tribe to establish and operate a casino on such property as described in Municipal Ordinance 472–98, although no such purpose is stated or even adverted to in Municipal Ordinance 472–98.

. . . . .

11. The Indian Nonintercourse [sic] Act, 25 U.S.C. § 177 was enacted in 1790.

. . . . .

14. In order to effectuate this transfer, the Delaware Tribe filed a lawsuit in the Superior Court of New Jersey, Cape May County, Chancery Division, Docket No. C–18–98, [alleging a violation of the Non–Intercourse Act and] seeking the return of aboriginal lands in the City of Wildwood.

Defs. Notice, Exh. A. Clearly, the references to the Non–Intercourse Act are included in the State's complaint in order to give context to Wildwood's approval of Municipal Ordinance 472–98. In deciding whether Wildwood had the authority to approve the ordinance, or whether Wildwood complied with mandatory procedures for the disposition of municipal property, a court will not have to address the applicability of the Non–Intercourse Act of 1790. Indeed, whether the Tribe has rights in the property under the Non–Intercourse Act of 1790 does not depend upon whether Wildwood acted in conformity with applicable New Jersey laws. The crux of the State's complaint is not whether the State can frustrate the Tribe's right to possess the parking lot under its settlement agreement with Wildwood. Rather, the issue to be decided is whether Wildwood had the authority to enter into the settlement agreement in the first place. This issue turns on the application and inter-

pretation of purely state laws, specifically, those laws governing the relationship between the State and its municipal corporations.

Although Wildwood will most likely seek to use the Non–Intercourse Act of 1790 as a defense to the State's claims, the existence of a federal defense does not confer subject matter jurisdiction upon a district court. *See Gateway 2000,* 942 F.Supp. at 990 (citing *Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. 2841; *Mottley,* 211 U.S. at 152, 29 S.Ct. 42).

Therefore, after careful review, I hold that a federal question is not presented on the face of the State's well-pleaded complaint.

### B. The Substantial, Disputed Question of Federal Law Exception and the Complete Preemption Exception Do Not Apply

■ In deciding a motion to remand, a district court's analysis is not limited to the face of the complaint. *See United Jersey Banks,* 783 F.2d at 366; *Gateway 2000,* 942 F.Supp. at 990. The Court must determine whether the case falls within one of the two narrow exceptions to the well-pleaded complaint doctrine: (1) the substantial, disputed question of federal law exception; or (2) the complete preemption exception. *See United Jersey Banks,* 783 F.2d at 366. For the reasons which follow, I find that these narrow exceptions do not apply.

#### 1. The Substantial, Disputed Question of Federal Law Exception

Wildwood argues that whether the Tribe has an interest in the parking lot is inextricably intertwined with the State's claims. *See* Defs. Brief at 5. As a consequence, Wildwood asserts that a substantial, disputed question of federal law is raised. *See id.* Wildwood further contends that the Tribe is a necessary party to this action. *See id.*

As stated in Section III.A above, the dispute surrounding the Tribe's rights in the parking lot need not be addressed in resolving the State's claims against Wildwood. Even assuming that the Tribe's rights constituted a substantial, disputed question of federal law at issue in the action between the State and Wildwood, this Court still would not have subject matter jurisdiction because resolution of the Tribe's rights is not "a necessary element of one of the well-pleaded state claims...." *See United Jersey Banks,* 783 F.2d at 367. Even assuming that resolution of the Tribe's rights is a necessary element of Wildwood's defense to the State's claims, the existence of a federal defense is insufficient to confer subject matter jurisdiction. *See Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. 2841; *Mottley,* 211 U.S. at 152, 29 S.Ct. 42.

Accordingly, I find that the substantial, disputed question of federal law exception does not apply to the State's state-law claims.

#### 2. The Complete Preemption Exception

Wildwood argues that the "State Court clearly cannot consider the issues underlying the proposed settlement since the same turn on Federal questions." *See* Defs. Brief, at 5, 8.[6] Presumably, Wildwood is arguing that state claims which necessarily impact tribal rights are completely preempted by the Non–Intercourse Act of 1790,[7] thus conferring subject matter jurisdiction upon this Court. This argument is without merit.

Only the Tribe has standing to vindicate its rights under the Non–Intercourse Act, *see generally Golden Hill Paugussett Tribe of Indians v. Weicker,* 39 F.3d 51 (2d Cir.1994), and the Tribe is not a party to this action. Indeed, it has filed its own, separate action in

---

**6.** Wildwood also argues that the Superior Court of New Jersey does not have "the power to issue orders which effectively enjoin the settlement of a Federal case which will require the application of [f]ederal [l]aw." *See* Defs. Brief at 8. Wildwood misstates the issue. Even assuming the State obtains the relief it seeks from the Superior Court, an order preventing the transfer of the parking lot, because Wildwood lacks the authority to do so under State law, will not in any way enjoin the pending federal litigation between the Tribe and the City. Such an order will merely prevent the City from doing what the State alleges it lacked the power to do, namely, change its boundaries without an act of the New Jersey Legislature. In addition, the federal suit between the Tribe and the City has not been settled, and is still pending before this Court.

**7.** *See supra,* note 1.

this Court to enforce its rights. *See Dela-ware Tribe*, Civil Action 98–3692(SMO). Furthermore, nothing in the text of the Non–Intercourse Act, or disclosed by this Court's research, intimates that Congress intended that the Act completely preempt state court actions between parties unaffiliated with a federally recognized Native–American tribe. *See* 25 U.S.C. § 177. Finally, resolution of the State's claims in this case will only determine whether Wildwood had the authority under its municipal charter to engage in settlement negotiations with the Tribe, or whether the Tribe must seek satisfaction from the State of New Jersey directly. In either instance, such a resolution will turn on narrow issues of state law. Contrary to Wildwood's assertion, the Superior Court of New Jersey is eminently capable of deciding questions about the meaning and scope of New Jersey law.

Accordingly, I conclude that the Non–Intercourse Act does not encompass the State's claims against Wildwood, and cannot reasonably be construed to completely preempt them. Thus, I find that the complete preemption exception does not apply.

### C. This Court May Not Exercise Supplemental Jurisdiction

■ Finally, in its Notice of Removal, Wildwood argues that this Court should treat this case as if it were consolidated with *Delaware Tribe of Western Oklahoma v. City of Wildwood*, Civil Action 98–3692(SMO), and apply 28 U.S.C. § 1441(c) to "the extent that this case raises claims that will be resolved solely by reference[ ] to state law." Defs. Notice, ¶ 12. This argument is without merit.

In essence, Wildwood asks this Court to rely upon the federal question claims of a non-party arising under 28 U.S.C. § 1331 to provide the "jurisdictional hook" which would allow the Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over the State's state law claims in this action. Such a creative reading of 28 U.S.C. §§ 1331, 1367, and 1441 is impermissible in light of the well established principle that federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*,

511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Gateway 2000*, 942 F.Supp. at 989 (discussing that under Article III of the United States Constitution "and appropriate congressional enactments," there are only two bases for a district court's original jurisdiction, § 1331 and § 1332 (citations omitted)).

Furthermore, § 1441(c) does not lend itself to the tortured reading advanced by Wildwood. Section 1441(c) permits a district court to resort to § 1367, supplemental jurisdiction, only if the state law claims are "joined with" a "separate and independent claim or cause of action within the jurisdiction conferred by section 1331...." 28 U.S.C. § 1441(c). That is not this case. As set forth in detail in Section III.A–B of this opinion, the State does not assert a claim within this Court's federal question jurisdiction conferred by § 1331. Therefore, this Court has no jurisdiction over the case even to contemplate applying §§ 1441(c) and 1367 to the State's purely state law claims. Simply put, before this Court may exercise supplemental jurisdiction, it must conclude that it has subject matter jurisdiction in the first instance.

Therefore, because I have found that no federal question is presented on the face of the State's well-pleaded complaint, and that the narrow exceptions to the well-pleaded complaint rule do not apply, I hold that this Court lacks subject matter jurisdiction and removal was improper. Accordingly, I shall remand this matter to the Superior Court of New Jersey, Cape May County, Chancery Division.

### IV. CONCLUSION

For the reasons set forth above, the State of New Jersey's motion to remand is granted. The Court will enter an appropriate order.

### ORDER

This matter having come before the Court on the motion of plaintiff, the State of New Jersey, to remand this action to the Superior Court of New Jersey, Cape May County, Chancery Division, or in the alternative, for a

406

preliminary injunction, Peter Verniero, Esq., Attorney General of the State of New Jersey, Mark J. Fleming, Esq., Assistant Attorney General, William C. Brown, Esq., Deputy Attorney General, appearing on behalf of the State of New Jersey, and Marcus H. Karavan, Esq., of Marcus H. Karavan, P.C., appearing on behalf of defendants, the City of Wildwood, and the Board of Commissioners of the City of Wildwood; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 6th day of October, 1998, hereby ORDERED that the motion of the State of New Jersey to remand this action to the Superior Court of New Jersey, Cape May County, Chancery Division, is GRANTED; and,

IT IS further ORDERED that the alternative motion of the State of New Jersey for a preliminary injunction is DISMISSED as moot.