The CITY OF CAMDEN, Plaintiff,

v.

BERETTA U.S.A. CORP.,
et al., Defendants.

Civil Action No. 99–4344 (JBS).

United States District Court,
D. New Jersey.

Jan. 27, 2000.

Lisa J. Rodriguez, Kenneth I. Trujillo, Ira Neill Richards, Louis C. Ricciardi, Trujillo Rodriguez & Richards, Haddonfield, NJ, John A. Misci, Jr., City Attorney, Camden, NJ, Steven E. Fineman, Robert J. Nelson, Jonathan D. Selbin, Lieff Cabraser Heinmann & Bernstein, New York City, Richard S. Lewis, Joseph M. Sellers, Ari Karen, Michelle A. Exline, Cohen Milstein Hausfeld & Toll, PLLC, Washington, DC, Jonathan Schub, Sheller Ludwig & Badey, Philadelphia, PA, Dennis A. Hennigan, Brian J. Siebel, Jonathan E. Lowy, The Center To Prevent Handgun Violence Legal Action Project, Washington, DC, and David Kairys, Kairys Rudovsky Epstein Messing & Rau, Philadelphia, PA, for Plaintiff.

John Renzulli, Anthony M. Pisciotti, Leonard Rosenbaum, Renzulli & Rutherford, Hackensack, NJ, for Defendants Arms Technology, Inc., Glock, Inc., Eagle Imports, Inc., and Import Sports, Inc.

William M. Griffin, III, Friday Eldredge & Clark, Little Rock, AR, of counsel, for Defendant Arms Technology, Inc.

Louis R. Moffa, Jr., Craig A. Livingston, Schnader Harrison Segal & Lewis LLP, Cherry Hill, NJ, Lawrence S. Greenwald, Gordon, Feinblatt, Rothman, Goffberger & Hollander LLC, Baltimore, MD, for Defendant Beretta U.S.A. Corp.

David R. Gross, Timothy A. Bumann, Pamela B. Betlow, Dana S. Mancuso, Budd Larner Gross Rosenbaum Greenberg & Sade PC, Short Hills, NJ, for Defendants Bryco Arms, Inc. and Taurus Intern. Mfg., Inc.

James C. Sabalos, Newport Beach, CA, of counsel, for Defendant Bryco Arms, Inc.

Alan E. Kraus, Riker Danzig Scherer Hyland & Perretti LLP, Morristown, NJ, Robert Klonoff, Thomas E. Fennell, Jones Day Reavis & Pogue, Washington, DC, for Defendant Colt's Mfg., Inc.

Timothy G. Atwood, Shelton, CT, for Defendant Intern. Armaments Corp.

Louis Niedelman, Cooper Perskie April Niedelman Wagenheim & Levenson, Atlantic City, NJ, James R. Branit, Bullaro & Caston, Chartered, Chicago, IL, for Defendant Navegar, Inc., d/b/a Intratec USA Corp.

Joseph Tripodi, Post Polak Goodsell & MacNeil, Roseland, NJ, for Defendant Navy Arms Co., Inc.

Steven Kudatzky, Bradley T. Beckman, Beckman and Associates, Philadelphia, PA, for Defendant North American Arms, Inc.

Robert C. Tarics, Tarics & Carrington PC, Houston, TX, for Defendant Phoenix Arms.

William Krauss, Robert L. Joyce, Wilson Elser Moskowitz Edelman & Dicker, Newark, NJ, for Defendant Sigarms, Inc.

Louis John Dughi, Jr., Dughi and Hewitt, Cranford, NJ, James P. Dorr, Anne G. Kimball, Wildman Harrold Allen & Dixon, Chicago, IL, for Defendants Smith & Wesson Corp. and Sturm, Ruger & Co., Inc.

Richard Mayberry, Mayberry & Associates, Washington, DC, for Defendant American Shooting Sports Council, Inc.

Douglas E. Kliever, Cleary Gottlieb Steen & Hamilton, Washington, DC, for Defendants National Shooting Sports Foundation and Sporting Arms and Ammunition Manufacturer's Institute, Inc.

## OPINION

SIMANDLE, District Judge.

### INTRODUCTION

This case calls upon the Court to decide whether an exclusively state law-based lawsuit brought by a municipality against an array of firearms manufacturers and distributors may be removed to federal

Court on the basis that the plaintiff's stated claims are completely preempted by the Commerce, Import/Export, and Due Process clauses of the United States Constitution, by the Gun Control Act of 1968, or by a combination thereof. For reasons discussed herein, the Court finds that neither the Constitution nor the Gun Control Act preempt any of the plaintiff's claims herein, that this Court thus lacks subject matter jurisdiction, and that plaintiff's present motion to remand must be granted.[1]

## BACKGROUND

In the present lawsuit, plaintiff the City of Camden (the "City") seeks compensation for its expenditures arising from handgun-related violence within its borders, and seeks to prevent such violence from occurring in the future. In furtherance of these aims, the City has sued a group of 19 manufacturers and/or distributors of firearms, three firearm industry trade organizations, and assorted Doe defendants.

The City's complaint, filed in New Jersey Superior Court on June 21, 1999, alleges that Camden has suffered immense hardship as a direct result of the defendants' willful, deliberate, reckless and negligent misconduct in the manufacture, distribution, sale, marketing and design of their firearms. (Complaint ¶ 2.) The City claims that as a result of defendants' conduct, it has seen a decrease in property values, in its population and in its tax base, and that the City's public health, safety and peace have all suffered. (*Id.* at ¶ 1 & 3.) Plaintiff further alleges that the defendants' conduct directly helps to perpetuate an illegal secondary market in cheap handguns which functions through "straw purchases", "kitchen table dealers", and gun shows, and acts to supply dangerous felons with firearms that they could not buy on their own. (*Id.* at ¶ 4.) Finally, plaintiff

alleges that defendants have sold products that are unreasonably dangerous and defective because of firearms' lack of adequate warnings and the lack of any safety features, such as trigger guards. (*Id.* at ¶¶ 5–6.)

The City's complaint states seven exclusively state law-based causes of action based on the above allegations. These are (1) public nuisance; (2) violations of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8–1 *et seq.*; (3) negligent distribution and marketing; (4) defective design under the New Jersey Products Liability Act, N.J.S.A. §§ 2A:58C–1 *et seq.*; negligent design and failure to warn; and (7) unjust enrichment. (Complaint at ¶¶ 78–133.) As relief, the City seeks compensatory and punitive damages for the harm the City has suffered. (Complaint, Relief Requested, p. 33.) The City also seeks appropriate injunctive relief in the form of an Order requiring defendants to (1) implement industrywide standards and training for firearms distributors for the purpose of reducing the illegitimate secondary market for firearms that exists in Camden and elsewhere, (2) cease manufacturing firearms without appropriate warnings and safety devices, (3) to fund a public education campaign in Camden about the dangers of guns, and (4) to fund a city-administered violence prevention program in Camden's schools. (Complaint, Request for Injunctive Relief, p. 34.) Notably, the City's complaint is devoid of reference to any federal statutes, regulations or provisions of the U.S. Constitution, and diversity of citizenship is absent since plaintiff and several defendants are New Jersey residents.

Defendants removed the case to this Court on September 10, 1999. In their Notice of Removal, defendants assert that the City's state law claims (1) arise under and (2) are completely preempted by sev-

---

1. This disposition has no impact upon a similar case pending upon the Court's docket encaptioned *Camden County Board of Chosen Freeholders v. Beretta, U.S.A. Corp., et al.*, Civil Action No. 99–2518(JBS), which was filed within the diversity jurisdiction of this Court under 28 U.S.C. § 1332.

eral Constitutional provisions, namely, the Interstate and Foreign Commerce Clause, U.S. Const. Art. I, § 8, the Import/Export Clause, U.S. Const. Art. I, § 10, and the Due Process Clause of the Fourteenth Amendment, U.S. Const. Amend. XIV, § 1. (Notice of Removal ¶¶ 4–8.) Alternatively, defendants argue that the Gun Control Act of 1968, 18 U.S.C. § 922 *et seq.*, manifests Congress's clear intention to preempt state law-based attempts to regulate firearms, and should preclude plaintiff's state law claims against defendants.

The City's present motion to remand urges this Court to return this non-diverse case to state court because none of the City's claims are, or could have been brought as, a federal cause of action. Furthermore, plaintiff asserts that defendants' preemption arguments have no basis in law. For these reasons, plaintiff moves this Court to follow the other U.S. District Courts that have considered the issue, and reject defendants' position that the Commerce Clause preempts state law claims against firearms manufacturers and merchants. *See McNamara v. Arms Technology, Inc.,* 71 F.Supp.2d 720 (E.D.Mich. 1999); *Archer v. Arms Technology, Inc.,* 72 F.Supp.2d 784 (E.D.Mich.1999); *City of Boston v. Smith & Wesson Corp.,* 66 F.Supp.2d 246 (D.Mass.1999); *Penelas v. Arms Technology, Inc.,* 71 F.Supp.2d 1251 (S.D.Fla.1999).

## DISCUSSION

### A. *Removal Jurisdiction*

Because it is not suggested that there is complete diversity of citizenship between the parties, this Court's jurisdiction, if any, must be based on a question of federal law. As a general principle, defendants may remove to the appropriate federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a), "unless Congress expressly provides otherwise." *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 474, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998).

The removal statute is "strictly construed against removal and all doubts should be resolved in favor of remand." *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990). In a motion to remand, the removing party, as the party urging the existence of jurisdiction, bears the burden of proving that jurisdiction exists. *Id.* Hence, the party asserting federal jurisdiction, here the defendants, must show that the case originally could have been filed in federal court. *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (hereinafter *"ICS"*) (citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.* 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

The original jurisdiction of the United States District Courts under 28 U.S.C. § 1331 is limited to cases arising under federal law, namely, "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, a cause of action arises under federal law only when the plaintiff's complaint raises issues of federal law. *ICS,* 522 U.S. at 163, 118 S.Ct. 523. The Supreme Court has stated that under federal pleading standards, the plaintiff is the "master of the claim", and he or she may avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar, Inc.,* 482 U.S. at 392. If the complaint does not state a federal cause of action, then removal is improper. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 353 (3d Cir. 1995). Therefore, an anticipated or actual federal defense generally does not qualify a case for removal. *Jefferson County, Ala. v. Acker,* 527 U.S. 423, 119 S.Ct. 2069, 2075, 144 L.Ed.2d 408 (1999) (citing *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126

(1908); *Franchise Tax Bd.*, 463 U.S. at 27–28, 103 S.Ct. 2841).

It is, however, incumbent on the Court to look beyond the bare citations present in the complaint to the nature of the claims present at the time the notice of removal was filed. If it appears that a federal question is a *necessary element* of one of the plaintiff's well-pleaded state claims, or that the plaintiff has "artfully plead" his or her causes of action to avoid federal question jurisdiction, then jurisdiction may be proper. *United Jersey Banks v. Parell,* 783 F.2d 360, 366–67 (3d Cir. 1986). A plaintiff is not permitted to use such "artful pleading" to close off a defendant's right to a federal forum where the real nature of the claim is federal. *See Federated Dept. Stores Inc. v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

In this case, there is nothing on the face of plaintiff's complaint that suggests any federal cause of action, and it is manifest that plaintiff has not engaged in artful pleading to avoid giving rise to federal question jurisdiction. Hence, according to the usual operation of the well pleaded complaint rule, federal question jurisdiction would be lacking where, as here, the complaint is based entirely on state law.

B. *Defendants' Argument for Complete Preemption Under the Commerce, Import/Export and Due Process Clauses*

Despite the absence of a federal question on the face of plaintiff's complaint, the defendants allege that plaintiff's suit is nonetheless "founded on a claim or right arising under the Constitution", and presents this Court with a case involving a federal question. 28 U.S.C. § 1441(b). The foundation for this argument is the novel theory that a municipality's state law-based causes of action, which defendants argue in reality seek to (1) control commercial firearms trade in other states, and (2) force federally licensed firearms manufacturers engaging in lawful inter-state commerce to modify their conduct to correspond to the regulations imposed by the City are violative of the Constitution's exclusive grant of power to Congress to regulate interstate commerce. (Defs.' Mem. in Opp'n at 8–12.) Allowing plaintiff's suit to proceed would, defendants assert, allow a state to regulate interstate traffic in firearms. Defendants urge that it is "selfevident" that the Commerce clause itself can have preemptive effect over such claims:

> If the Commerce Clause gives Congress the power to regulate interstate commerce, and thus confers the power to preempt state regulation through federal statutory law, then it follows that Commerce Clause itself can completely preempt state regulation—namely, regulation that reaches out beyond the state's borders to control commercial conduct lawful in other states and signifies an intent to impose social policy on the entire nation.

(Defs.' Mem. in Opp'n at 1.)

Because the Constitution reserves power over interstate commerce solely to Congress, defendants argue, plaintiff's suit is "completely preempted" by the Interstate and Foreign Commerce Clause, U.S. Const. Art. I, § 8, the Import/Export Clause, U.S. Const. Art. I, § 10, and the Due Process Clause of the Fourteenth Amendment. Defendants further allege that the forbidden effect of plaintiff's suit on interstate commerce impinges upon an area which has been strictly reserved to Congress's authority and should fall within the narrowly defined exceptions to the well-pleaded complaint rule for instances where federal law has "completely preempted" a particular area of law such that any claim that falls within that area is "necessarily federal in character." *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. 1542.

The complete preemption doctrine confers upon federal courts original subject matter jurisdiction notwithstanding

the absence of a federal cause of action on the face of the complaint, *Rivet,* 522 U.S. at 476, 118 S.Ct. 921. Accordingly, the doctrine operates as a "narrow exception" to the well-pleaded complaint rule. *In re U.S. Healthcare,* 193 F.3d at 160.

Traditionally, courts considering the complete preemption exception to the well pleaded complaint rule have focused on whether there is a legislative intent to preclude state law-based lawsuits that touch on a particular area of federal concern. That is, in order to determine that an area of state concern has been completely preempted by federal law, a district court must find that there is a manifest indication that Congress intended to permit removal despite the plaintiff's exclusive reliance on state law. *See Metropolitan Life,* 481 U.S. at 67, 107 S.Ct. 1542.

In this Circuit, this inquiry into Congress's preemptive intent has been further refined, and courts must apply and find satisfied a two-pronged test before finding an area of state law completely preempted. The court must ask first "whether the [federal] statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co.,* 858 F.2d 936, 942 (3d Cir.1988). If there are no such enforcement provisions, then "there is no claim arising under federal law to be removed and litigated in the federal court." *Id.* Second, upon finding that there are appropriate enforcement provisions in place, the court "must further inquire whether there is a clear expression of Congressional intention to permit removal despite the plaintiff's clear reliance on state law." *Id.* Only if both prongs are satisfied should the court apply the complete preemption doctrine to impart federal question jurisdiction to exclusively state law causes of action.

Defendants argue that this is not a traditional complete preemption case, and that the complete preemption doctrine should not be limited to situations in which Congress has legislatively precluded certain state law claims by enacting provisions creating exclusively federal remedies for vindication of certain wrongs. Despite the absence of any supporting authority, defendants argue that, like a statutory scheme, the Constitution also may preclude certain state law claims. That the Constitution can completely preempt a state law claim is, defendants assert, supported by sections 1331 and 1441(b) of the judicial code, which provide that federal courts have original jurisdiction over suits arising under the Constitution. (Defs.' Mem. in Opp'n at 3.)

The Court rejects defendants' effort to create out of whole cloth a new doctrine of "complete constitutional preemption". In essence, defendants ask for a ruling that only federal courts may judge whether a particular state law claim will have an unhealthy effect on interstate commerce, or upon foreign commerce under the Import/Export clause. Notwithstanding the fact that such a finding would offend traditional notions of federalism and comity, defendants have provided no legally sound reasons in support of such an unprecedented theory. The Commerce Clause confers upon Congress the power to enact legislation regulating interstate and foreign commerce. *United States v. Lopez,* 514 U.S. 549, 551, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). However, that provision contains no self-enforcing mechanism nor does the Commerce Clause give rise to a private right of action absent specific federal legislation. Further, simply because a state law or claim may have an effect on interstate commerce does not mean that such law is precluded by the Commerce Clause. It is long established that Congress's power to regulate interstate commerce does not preclude all state power to regulate. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 140, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973) (citing *Southern Pac. Co. v. State of*

*Arizona ex rel. Sullivan,* 325 U.S. 761, 766–67, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945); *Brotherhood of Locomotive Firemen & Enginemen v. Chicago, R.I. & P.R. Co.,* 393 U.S. 129, 89 S.Ct. 323, 21 L.Ed.2d 289 (1968); *Huron Portland Cement Co. v. Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960)). Therefore, although the Commerce Clause and other provisions of the Constitution may affect the measure of the City's relief should its suit prove successful, this possibility has no bearing on whether this Court has jurisdiction. *See City of Boston v. Smith & Wesson Corp.,* 66 F.Supp.2d at 249–50 (no Commerce Clause preemption of state law claims brought against firearms manufacturers). While it is true that plaintiff here is seeking injunctive relief that may compel defendants to change the way they do business, the fact that state tort and product liability actions have potential effects outside the state is merely a manifestation of the principle that one state's laws permissibly may influence matters beyond its own borders. *See Southern Pac. Co. v. State of Arizona ex rel. Sullivan,* 325 U.S. 761, 766–67, 65 S.Ct. 1515, 89 L.Ed. 1915. Such effects on commerce are not automatically an affront to the interstate Commerce Clause. For these reasons, this Court rejects defendants' constitutional preemption argument as an unwarranted extension of the doctrine.[2]

Allowing defendants to remove state law claims to federal court on the grounds that the City's suit will impact interstate commerce would eviscerate the well settled principle that the plaintiff is the "master of the claim" and may avoid federal jurisdiction by exclusive reliance on state law. *See Caterpillar Inc.,* 482 U.S. at 392, 107 S.Ct. 2425. If defendants could, by injecting constitutional concerns into this plainly state-law based lawsuit, transform this action into one arising under federal law, such capability would leave the plaintiff the "master of nothing." *Id.* at 399, 107 S.Ct. 2425. The logical extension of defendants' Commerce Clause preemption argument would be to permit removal of almost any state tort action into federal court on the ground that it impacts an out-of-state commercial interest. Such an arrogation of federal judicial power finds no support in the Constitution.

As noted above, similar arguments in favor of Commerce Clause preemption of state law claims against firearms manufacturers have been rejected every U.S. District Court to have considered the issue. In each of these cases, the court rejected the firearm manufacturer-defendants' assertions that complete preemption could be grounded on the Commerce and/or Import/Export Clauses, and ordered remand. *See McNamara v. Arms Technology, Inc., supra; Archer v. Arms Technology, Inc., supra; City of Boston v. Smith & Wesson Corp., supra; Penelas v. Arms Technology, Inc., supra.* This Court will likewise refuse to recognize a new complete preemption doctrine based on Constitutional grounds.

C. *Complete Gun Control Act Preemption*

■ As an alternative to its Constitution-based preemption arguments, defendants assert that the Gun Control Act of 1968, as amended, 18 U.S.C. § 922 *et seq.,* manifests an explicit Congressional intent to completely preempt all state law claims that tend to impose regulation on the manufacture and sale of firearms. This argument centers on language found in the legislative history of the Act indicating that the "principle purpose [of the Gun Control Act] is to strengthen Federal con-

---

**2.** While the Court holds that the removal of this action based upon the complete preemption doctrine was improper, the Court does not reach the issue whether the federal constitution and law will operate as a defense to one or more of plaintiff's claims. An action grounded on state law pending in state court does not become removable due to the availability of a federally based defense. *Jefferson County v. Acker, supra,* 119 S.Ct. at 2075. Therefore, it does not matter that defendants may have such a defense available in the state court when a federal court considers removal.

trols over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders." H.Rep. No. 1577, 1968 U.S.C.C.A.N. 4410, 4411 (1968). This argument is contradicted, however, by both the text of the Act itself and the legislative history that defendants cite in support of their complete preemption argument, and has no basis in case law.

A review of the text and legislative history of the Gun Control Act plainly shows that it is not a complete preemption statute. There is no indication whatsoever that Congress intended to displace state law claims against purveyors of firearms. The very House Report cited by defendants indicates that Congress did not intend to preclude state law claims related to the sale and manufacture of firearms, but instead enacted the Gun Control Act "*to assist the States* effectively to regulate firearms". H.Rep. No. 1577, *supra* (emphasis added). This language displays Congress's intent to supplement, not supplant, state laws relating to the regulation of firearms.

The Court also rejects defendants' argument that legislative intent to completely preempt state law regulation of firearms is made apparent by Congress's amendment of the Act in 1986 to add § 926A, which provides, in relevant part:

Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm.

18 U.S.C. § 926A. Section 926A, both textually and in the words of its sponsor, "confers upon all law-abiding citizens a right to transport their firearms in a safe manner in interstate commerce," 131 Cong. Rec. S9101–05 (July 9, 1985) (statement of Sen. Hatch). While this section does provide that *conflicting* state provi-

sions affecting the transportation of firearms will be preempted, this language does not support a finding that Congress intended with this amendment to preclude *all* state laws affecting firearms.

Indeed, § 927 of the Act, which was left intact even after the 1986 amendments, unambiguously expresses Congress's intent *not* to completely preempt state or local laws that relate to firearms. Section 927 of the Act states that the Act is intended to exist side by side with state laws affecting firearms:

**Effect on State law**

No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

18 U.S.C. § 927. Under this provision, then, only directly conflicting state laws will be preempted by the Act. This section thus compels a finding that the Gun Control Act only may be raised as an "ordinary preemption" defense to a conflicting state law, and not as a jurisdictional bar to all state claims relating to firearms. *See In re U.S. Healthcare,* 193 F.3d at 160. Furthermore, in the present case, plaintiffs invoke no state law aimed at firearms manufacture or distribution, but instead seek to apply the various tort and product liability doctrines to firearms. While a state statute or judicial injunction precluding a person from traveling to or through New Jersey with a lawfully possessed firearm would run afoul of § 926A, plaintiff makes no such claim here.

Defendants argue that the savings clause of § 927 should, essentially, be disregarded because Congress cannot authorize the states to violate the Constitution's interstate commerce clause, (Defs.' Mem. in Opp'n at 5 n. 3 (citing *Saenz v. Roe,* 526 U.S. 489, 119 S.Ct. 1518, 1528–29, 143 L.Ed.2d 689 (1999) ("Congress has no af-

firmative power to authorize the states to violate the Fourteenth Amendment and is implicitly prohibited from passing legislation that purports to validate any such violation.")).) This argument is unpersuasive. Congress, in enacting § 927, has conferred no such power upon the states; instead, Congress has stated its intent to share the field of firearms regulation with the states unless there is a direct and positive conflict between state law and federal law. Finally, defendants' suggestion that Congress provided for criminal prosecution of persons not federally licensed to transport, ship or receive firearms, 18 U.S.C. § 922(a)(1)(A), and thus vindicated the same interests as plaintiff pursues, is far-fetched. First, federal and state criminal statutes addressing unlawful firearms possession and transfers co-exist without conflict. Second, plaintiff seeks monetary relief to compensate for its alleged economic losses under various tort doctrines which cannot be stretched to fit defendants' recharacterization of them as criminal regulatory doctrines.

Moreover, even if there was a clear Congressional statement of intent to completely preempt state law claims against firearms merchants (which there is not), it is evident that the Gun Control Act does not provide a federal cause of action for vindicating claims such as those the City raises. Without providing an equivalent cause of action to the state law claims brought in this suit, the Gun Control Act fails to preempt state law claims such as those brought in the present suit. *See Railway Labor Executives Ass'n,* 858 F.2d at 942.

Research has revealed no decisions holding that the Gun Control Act completely preempts state claims related to the sale and manufacture of firearms. To the contrary, the U.S. District Court for the Central District of California recently rejected this same argument as advanced by a firearms industry defendant. *People v. Arcadia Machine & Tool,* 99–CV–8411 (RSWL) (C.D.Cal. Oct. 4, 1999). (Pl.'s Ex. D at 14:1–20.) This Court, like the *Arcadia* court, now finds that the Gun Control Act was by its very terms intended to exist in harmony with non-conflicting state laws affecting firearms, and does not confer federal question jurisdiction by virtue of preemption.

## CONCLUSION

The burden of proving federal jurisdiction rests on the party asserting it, in this case the defendants. *See Abels v. State Farm Fire and Cas. Co.,* 770 F.2d 26, 29 (3d Cir.1985). For the reasons discussed above, the defendants have failed to met their burden of showing that the plaintiff's complaint arises under, or is completely preempted by, federal constitutional or statutory law. Accordingly, the Court will grant plaintiff's motion to remand. The accompanying Order is entered.