*663
 

 OPINION
 

 ZIEGLER, Chief Judge.
 

 Pending before the court is the motion (doc. no. 2) of defendants, Sprint Spectrum, L.P., Sprint Communications Company, L.P., and Sprint Personal Communications Services (collectively “Sprint”), to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and the motion (doc. no. 5) of plaintiffs, Mark B. Aronson and Joseph G. Kanfoush, to remand pursuant to 28 U.S.C. § 1447(c) for lack of jurisdiction. For the reasons that follow, defendants’ motion will be denied and plaintiffs’ motion will be granted.
 

 I. FACTS
 

 On or about September 23, 1999, plaintiffs commenced this action in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging invasion of privacy. Plaintiffs claimed that defendants’ account system improperly allowed any person access to personal, confidential information. Specifically, plaintiffs asserted that Sprint customers who accessed their account information via the internet or the Sprint toll-free customer service number (when answered by a live person) were required to provide a predesignated secret account password (“PIN”). However, those persons accessing the toll-free number and using automated customer service, or any person with a wireless telephone that works on the Sprint network who dials “2 TALK,” “2 SEND,” “2 OK,” or “2 CALL,” could access account information by inputting the five digit post office zip code of the address where Sprint mails the monthly statement for that Sprint telephone number. Plaintiffs asserted that a third party could gain access to any Sprint customers’ account if the third party knew the telephone number and billing address zip code for that customer, without using a PIN. Notwithstanding this practice, plaintiffs did not allege that any third party had gained access to their private accounts.
 

 On or about October 29, 1999, Sprint removed the action to federal court, asserting federal preemption of plaintiffs’ state law claims. Thereafter, Sprint filed the pending motion to dismiss claiming that plaintiffs’ state law claim is preempted by section 222 of the Federal Telecommunications Act of 1996 and that any claim for injunctive relief plaintiffs might subsequently seek are unavailable because plaintiffs had not exhausted available administrative remedies. Defs.’ Br. at 4-10. Plaintiffs filed a motion to remand the action, contending that the court lacks jurisdiction to address the issues raised in the state court complaint. We will consider these arguments below.
 

 
 *664
 
 II. DISCUSSION
 

 We will first consider plaintiffs’ motion to remand for this decision affects our jurisdiction over other pending matters, including Sprint’s motion to dismiss. Plaintiffs argue that remand is warranted because this court lacks subject matter jurisdiction over this controversy. Specifically, plaintiffs reason that federal jurisdiction is wanting because the invasion of privacy claim does not arise under the Federal Telecommunications Act of 1996 (“FTA”), 47 U.S.C. § 151
 
 et seq.
 
 Rather, the “subject matter, the issues raised, and the relief sought are each regulated by the Commonwealth of Pennsylvania. 66 Pa. C.S.A. § 1302 (Supp).” Pls.’ Mot. ¶ 8.
 
 [1]
 
 Plaintiffs further reason that jurisdiction cannot be exercised because the Pennsylvania Public Utility Commission (“PUC”) regulates Sprint’s practices. Pls.’ Mot. ¶ 9. Finally, plaintiffs contend that section 221 of the FTA supports the motion for remand
 
 [2]
 
 and section 222 is irrelevant to the instant lawsuit. Defendants rejoin that removal is appropriate because section 222 of the FCA preempts state regulation in this area. Defs.’ Br. in Opp’n Mot. Dismiss at 5-10.
 

 When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal.
 
 See Packard v. Provident Nat’l Bank,
 
 994 F.2d 1039, 1045 (3d Cir.),
 
 cert. denied sub nom. Upp v. Mellon Bank, N.A.,
 
 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993);
 
 accord Boyer v. Snap-On Tools Corp.,
 
 913 F.2d 108, 111 (3d Cir.1990),
 
 cert. denied,
 
 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991). Accordingly, we will consider defendants’ arguments initially.
 

 Plaintiffs’ state court complaint relies solely on state law. Under 28 U.S.C. § 1441, only state' court actions over which “the district courts of the United States have original jurisdiction, may be removed by the defendant.” As the asserted basis of federal jurisdiction in this case is 28 U.S.C. § 1331 (federal question),
 
 see
 
 Doc. No. 1 ¶ 6, the “well-pleaded complaint rule” applies. For a case to be removable under § 1441 and § 1331, the well-pleaded complaint rule requires the federal question to be presented on the face of the plaintiffs properly pleaded complaint.
 
 See Rivet v. Regions Bank of
 
 
 *665
 

 La.,
 
 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998);
 
 Caterpillar Inc. v. Williams,
 
 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987);
 
 Gully v. First Nat’l Bank,
 
 299 U.S. 109, 112-13, 57 S.Ct. 96, 81 L.Ed. 70 (1936). In addition, under this rule:
 

 a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the complaint, and even if both parties concede that the federal defense is the only-question truly at issue.
 

 Caterpillar,
 
 482 U.S. at 393, 107 S.Ct. 2425 (emphasis added);
 
 Rivet,
 
 522 U.S. at 475, 118 S.Ct. 921;
 
 Gully,
 
 299 U.S. at 112, 57 S.Ct. 96.
 

 The Supreme Court, however, has fashioned an “independent corollary” to the well-pleaded complaint rule, known as the “complete preemption doctrine.” The complete preemption doctrine provides that “Congress may so completely preempt a particular area, that any civil complaint raising that select group of claims is necessarily federal in character.”
 
 Metropolitan Life Ins. Co. v. Taylor,
 
 481 U.S. 58, 63-64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In such cases, “any complaint that comes within the scope of the federal cause of action [created by the federal statute] necessarily ‘arises under’ federal law” for purposes of removal based on federal question jurisdiction.
 
 Franchise Tax Bd. v. Construction Laborers Vacation Trust,
 
 463 U.S. 1, 24, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983);
 
 Rivet,
 
 522 U.S. at 475-76, 118 S.Ct. 921.
 

 The Supreme Court has narrowly interpreted the scope of the complete preemption doctrine. Since 1968, the Court has found complete preemption in only two settings: (1) claims alleging a breach of a collective bargaining agreement that fall under § 301 of the Labor Management Relations Act (“LMRA”), 29 U.S.C. § 185,
 
 see Avco Corp. v. Aero Lodge No. 785,
 
 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and (2) claims for benefits or enforcement of rights under the Employee Retirement Income Security Act (“ERISA”), 29 U.S.C. § 1132(a)(1)(B),
 
 see Metropolitan Life,
 
 481 U.S. at 63-67, 107 S.Ct. 1542. Indeed, in a well-noted concurrence, Justice Brennan cautioned that, “[i]n future cases involving [the application of the complete preemption doctrine to] other statutes, the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court.”
 
 Metropolitan Life,
 
 481 U.S. at 68, 107 S.Ct. 1542. Therefore, as with remand motions generally, all doubts should be resolved against removal and in favor of remand to the state court.
 
 See Boyer,
 
 913 F.2d at 111.
 

 The Court of Appeals, recognizing the limited basis for “recharacterizing a state law claim as a federal claim removable to district court,” has articulated a two-prong test to determine the applicability of the complete preemption doctrine.
 
 See Railway Labor Executives. Ass’n v. Pittsburgh & Lake Erie R.R. Co.,
 
 858 F.2d 936, 942 (3d Cir.1988);
 
 see also Goepel v. National Postal Mail Handlers Union,
 
 36 F.3d 306, 311 (3d Cir.1994),
 
 cert. denied,
 
 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 555 (1995). First, the purported preempting statute must contain “civil enforcement provisions within the scope of which the plaintiffs state claim falls.”
 
 Railway,
 
 858 F.2d at 942. If this is satisfied, a district court then must determine “whether there is a clear indication of a Congressional intention to permit removal despite the plaintiffs exclusive reliance on state law.”
 
 Id.
 
 Nevertheless, it is only “a very limited area in which a federal court ... [may] recharacterize what purports to be a state law claim as a claim arising under a federal statute.”
 
 Id.
 

 1.
 
 Civil Enforcement Provisions Within the FCA
 

 Defendants contend that the first prong of the
 
 Railway
 
 test is satisfied. The first
 
 *666
 
 prong of the
 
 Railway
 
 test requires the Act, if it completely preempts plaintiffs’ state law claim, to contain civil enforcement provisions within the scope of which plaintiffs’ state claim falls.
 

 Sections 205 through 209 are the civil enforcement provisions for the Act. Sections 205
 
 [3]
 
 and 206 makes common carriers liable for damages sustained by any person as a consequence of the carrier’s actions in violation of the Act.
 
 [4]
 
 Sections 208
 
 [5]
 
 and 209
 
 [6]
 
 authorize any person or group of persons to complain about violations of the Act to the Federal Communications Commission (“FCC”) and to collect damages which result from any such violation. Finally, Section 207 gives an individual harmed by violations of the Act the choice of pursuing a complaint in the district court or before the Commission, but precludes an aggrieved from pursuing both remedies. 47 U.S.C. § 207.
 

 Defendants contend that section 222 of the Act affords the substantive rights which plaintiffs seek to enforce. Section 222 requires that:
 

 Except as required by law or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary network information [CPNI] by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to individually identifiable customer proprietary network information in its provision of (A) the telecommunications service from which such information is derived, or (B) services necessary to, or used in, the provision of such telecommunications service, including the publishing of directories.
 

 47 U.S.C. § 222(c)(1) (West Supp.1999). Thus, the argument continues, because plaintiffs’ complaint concerns disclosure of customer proprietary information, which is covered by Section 222, plaintiffs’ remedies are contained within sections 205-209 of the Act.
 

 Under the complete preemption doctrine, the civil enforcement provisions of the purported preempting statute must vindicate the same interest that the plaintiffs’ state cause of action seeks to vindicate.
 
 Railway,
 
 858 F.2d at 942. “If the federal statute provides no provision for adjudication of the right plaintiff seeks to enforce, then no claim arises under federal law, and removal [is] improper.”
 
 Id.
 

 Although plaintiffs have alleged a state law claim for invasion of privacy, this allegation appears, on its face, to present a direct challenge to Sprint’s practice of disclosing customer information. Indeed, plaintiffs’ state claim parallels a claim for a
 
 *667
 
 violation of the requirement imposed by Section 222, that a common carrier shall not disclose “or permit access to individually identifiable customer proprietary network information.” 47 U.S.C. § 222(c)(1). As a challenge to Sprint’s practices by which a third party can access customer proprietary network information, Section 207 of the Act would provide plaintiffs with a federal cause of action for damages. Therefore, we find that the first prong of the
 
 Railway
 
 test is satisfied.
 
 Cf. Bauc-helle v. AT & T Corp.,
 
 989 F.Supp. 636, 645 (D.N.J.1997) (The FCA does not impose any duty on common carriers to be truthful in their promotional practices, therefore, the FCA does not vindicate the action the plaintiffs sought to prevent);
 
 Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc.,
 
 958 F.Supp. 947, 956 (D.Del.1997) (finding,
 
 inter alia,
 
 “the statutory fraud and breach of contract claims do not challenge the reasonableness of a billing practice. These claims therefore do not fall within the scope of the civil enforcement provision of the Act.”);
 
 DeCas-tro v. AWACS, Inc.,
 
 935 F.Supp. 541, (D.N.J.1996) (finding,
 
 inter alia,
 
 that because the Communications Act did not impose a duty on common carriers to make accurate and authentic representations in their promotional practices, Section 207 provided no remedy for a deviation from such conduct).
 

 2. Congressional Intent for Removal
 

 Even if there is a civil enforcement provision and the plaintiff’s claim falls within it, a court must further inquire whether there is a clear indication of a Congressional intention to permit removal despite the plaintiffs exclusive reliance on state law.
 
 See Metropolitan Life,
 
 481 U.S. at 64-66, 107 S.Ct. 1542;
 
 Railway,
 
 858 F.2d at 942. Both the Supreme Court and the Court of Appeals have emphasized that the pertinent Congressional intent is one to permit removal and not one to preempt state law.
 
 See Metropolitan Life,
 
 481 U.S. at 66, 107 S.Ct. 1542;
 
 Railway,
 
 858 F.2d at 941 (“complete preemption is a distinct concept from ordinary preemption”). Indeed, the Court of Appeals has expressly stated:
 

 If there is no affirmative indication of the requisite Congressional intent to permit removal, there can be no “complete preemption.” If there is no such intent, the district court need not and should not address the issue of whether the state substantive law relied upon by the plaintiff has been preempted by federal law.
 

 Railway,
 
 858 F.2d at 942. In addition, Justice Brennan’s concurrence in
 
 Metropolitan Life
 
 explicitly emphasized the narrowness of the Court’s opinion. He stated:
 

 The Court rejects the position, urged by respondent, that removal jurisdiction exists only when the complaint states a claim that is “obviously” pre-empted by state law — that is, when a federal statute has obviously preempted state law, or when a decision of this Court has construed an ambiguous federal statute to pre-empt state law. The Court instead focuses on the “intent of Congress” ... to make respondent’s cause of action removable to federal court....
 

 While I join the Court’s opinion, I note that our decision should not be interpreted as adopting a broad rule that any defense premised on congressional intent to preempt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, “Congress has clearly manifested an intent to make causes of action ... removable to federal court.”
 

 481 U.S. at 67-68, 107 S.Ct. 1542 (emphasis added) (citations omitted). Thus,
 
 Metropolitan Life
 
 instructs that only the clear intent of Congress to establish removal jurisdiction satisfies the second prong of the
 
 Railway
 
 test, even if the federal statute obviously preempts state law claims.
 

 Here, the Act cannot satisfy the second prong of the
 
 Railway
 
 test because
 
 *668
 
 Congressional intent to permit removal is wanting. First, although defendants strenuously argue that Congress has expressed an intent for removal of plaintiffs’ claims, we have not found, and defendants have not cited, anything in the legislative history that suggests that Congress considered whether state law cases could be removed under the Act.
 
 [7]
 
 Second, the jurisdictional statutes do not support an inference that Congress intended to permit removal. Indeed, section 414 of the Act, the savings clause, provides that “[njothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.” 47 U.S.C. § 414 (1991) (emphasis added). No such savings clause is found in the preemptive provisions of the LMRA and ERISA.
 
 [8]
 

 Defendants cite several cases for the proposition that the Act completely occupies the field to the exclusion of state law.
 
 See, e.g., MCI Telecommunications Corp. v. Teleconcepts, Inc.,
 
 71 F.3d 1086, 1093-96 (3d Cir.1995),
 
 cert. denied,
 
 519 U.S. 815, 117 S.Ct. 64, 136 L.Ed.2d 25 (1996);
 
 Nordlicht v. New York Tel. Co.,
 
 799 F.2d 859, 862 (2d Cir.1986);
 
 Ivy Broadcasting Co. v. American Tel. & Tel. Co.,
 
 391 F.2d 486, 491 (2d Cir.1968);
 
 Mellman v. Sprint Communications Co.,
 
 975 F.Supp. 1458, 1461 (N.D.Fla.1996). However, other than
 
 MCI Telecommunications,
 
 these eases are not binding authority on this court.
 

 Moreover, with respect to
 
 MCI Telecommunications,
 
 defendants’ reliance on this case is misplaced because
 
 MCI Telecommunications
 
 was an action filed in federal court and did not decide the issue of re-movability under the complete-preemption doctrine. Rather, the Court of Appeals held that federal district courts have subject matter jurisdiction over actions for unpaid charges for telecommunications services which are provided under a tariff that providers must file with the FCC. Further,
 
 MCI Telecommunications
 
 simply stands for the proposition that Congress intended federal law to preempt state law, and not for the proposition that Congress intended to permit removal despite the exclusive reliance on state law. Our inquiry, however, focuses on whether Congress intended removal jurisdiction not whether Congress intended to preempt state law claims. Thus, while
 
 MCI Telecommunications
 
 stands for the proposition that a federal district court has subject matter jurisdiction over claims for unpaid telecommunications service charges which are not specifically alleged under the Communications Act, it does not mandate the removal
 
 *669
 
 of state law claims under the complete preemption doctrine.
 

 Further, Sprint’s argument that Congress intended to permit removal is substantially lower than that made in
 
 Metropolitan Life.
 
 There, the Court found that the language of the jurisdictional sections of ERISA “closely” paralleled the provisions of Section
 
 301
 
 of the LMRA, which the Court had previously held to be governed by the complete preemption doctrine. Additionally, the court noted that the legislative history of ERISA included a conference committee report which stated that suits under it:
 

 “May be brought not only in U.S. District Courts but also in State Courts of competent jurisdiction.
 
 All such actions in Federal and State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under Section 301 of the Labor-Management Relations Act of 194,7.”
 
 H.R.Conf.Rep. No. 93-1230, p. 327 (1974)[.]
 

 Metropolitan Life,
 
 481 U.S. at 65-66, 107 S.Ct. 1542. Thus, it was Congress’ knowledge of the prior interpretation of Section 301 of the LMRA, coupled with a clear indication by Congress that it desired ERISA’s provisions to be interpreted in the same manner, which led the Court to conclude in
 
 Metropolitan Life
 
 that the complete preemption doctrine applied to ERISA.
 

 Here, in contrast, our search has revealed nothing to indicate that Congress intended the Act to be given similar effect. Indeed, we have not found, and defendants have not identified, anything in the legislative history of the Act that suggests that Congress even considered whether state law cases should be removed. Accordingly, we must conclude that the case was improperly removed.
 

 Defendants are free to raise preemption as a defense in state court, “and our holding that [the Act] ... does not completely preempt [plaintiffs’] ... state law claims so as to permit removal of this action does not prejudge the merits of such a claim.”
 
 Goepel,
 
 36 F.3d at 316. “State courts are competent to determine whether state law has been preempted by federal law and [absent complete preemption,] they must be permitted to perform that function in cases brought before them[.]”
 
 Railway,
 
 858 F.2d at 942;
 
 Goepel,
 
 36 F.3d at 316. Plaintiffs’ motion to remand must be granted.
 
 [9]
 

 An appropriate order will follow.
 

 ORDER
 

 AND NOW, this 12th day of January, 2000, upon consideration of defendants’ motion (doc. no. 2) to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and plaintiffs’ motion (doc. no. 5) to remand, pursuant to 28 U.S.C. § 1447(c), for lack of jurisdiction,
 

 IT IS ORDERED that defendants’ motion (doc. no. 2) to dismiss shall be and hereby is denied.
 

 IT IS FURTHER ORDERED that plaintiffs’ motion (doc. no. 5) to remand shall be and hereby is granted.
 

 [1]
 

 . Section 1302 of the Pennsylvania Public Utility Commission, which plaintiffs argue is controlling, provides that "[ujnder such regulations as the commission may prescribe, every public utility shall file with the commission ... tariffs showing all rates established by it and collected or enforced, or to be collected or enforced, within the jurisdiction of the commission.” 66 Pa.C.S.A. § 1302 (West Supp. 1999-2000). Section 102, which defines “public utility,” expressly excludes "[ajny person or corporation, not otherwise a public utility, who or which furnishes mobile domestic cellular radio telecommunications service.” 66 Pa.C.S.A. § 102(2)(iv) (West Supp. 1999-2000) (emphasis added). Therefore, plaintiffs’ reliance on section 1302 is misplaced. Indeed, the Pennsylvania Supreme Court, citing section 102(2)(iv), has held that a provider of cellular phone services, such as Sprint, is simply a private business enterprise which is not regulated by the Public Utility Commission.
 
 See Crown Communications v. Zoning Hearing Bd. of Borough of Glenfield,
 
 550 Pa. 266, 705 A.2d 427 (1997);
 
 AWACS, Inc. v. Zoning Hearing Bd. of Newton Township, Delaware County,
 
 702 A.2d 604, 606-07 (Pa.Comwlth.Ct. 1997),
 
 aff'd,
 
 559 Pa. 104, 739 A.2d 159 (1999) (citing
 
 Crown Communications v. Zoning Hearing Bd. of Borough of Glenfield,
 
 550 Pa. 266, 705 A.2d 427 (1997)).
 

 [2]
 

 . Section 221(b) of the FCA provides:
 

 Subject to the provisions of sections 225 and 301 of this title, nothing in this chapter shall be construed to apply, or to give the Commission jurisdiction, with respect to charges, classifications, practices, services, facilities, or regulations for or in connection with wire, mobile, or point-to-point radio telephone exchange service, or any combination thereof, even though a portion of. such exchange service constitutes interstate or foreign communication, in any case where such matters are subject to regulation by a State commission or by local governmental authority.
 

 47 U.S.C. § 221(b) (emphasis added). Because Sprint as a provider of cellular services is not subject to the regulation or control of the PUC, as required by section 221(b), we fail to see the applicability of this section.
 

 [3]
 

 . Section 205 provides:
 

 Whenever, after full opportunity for hearing, upon a complaint ... the Commission shall be of the opinion that any ... practice of. any carrier or carriers is or will be in violation of any of the provisions of this chapter, the Commission is authorized and empowered to determine and prescribe what will be the just and reasonable charge ... and to make an order that the carrier or carriers shall cease and desist from such violation!.]
 

 47 U.S.C. § 205(a) (1991).
 

 [4]
 

 . Section 206 provides, in relevant part:
 

 In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained ..., together with a reasonable counsel or attorney's fee, to be fixed by the court!.]
 

 47 U.S.C. § 207 (1991).
 

 [5]
 

 . Section 208(a) provides that, "!a]ny person ... complaining of anything done or omitted to be done by any common carrier subject to this chapter, in contravention of the provisions thereof, may apply to said Commission by petition!.]” 47 U.S.C. § 208 (1991).
 

 [6]
 

 . Section 209 provides, "!i]f, after hearing on a complaint, the Commission shall determine that any party complainant is entitled to an award of damages under the provisions of this chapter, the Commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named.” 47 U.S.C. § 209 (1991).
 

 [7]
 

 . Defendants cite 47 U.S.C. § 332(c)(3)(A) (West Supp.1999) and a 1998 FCC Regulation (63 Fed.Reg. 20326 (1998)) to support their contention that removal is appropriate. However, we fail to see how Section 332 or the 1998 regulation answer the relevant inquiry. Namely, whether Congress intended for removal of claims filed under the Act.
 

 [8]
 

 . The court in
 
 Castellanos v. U.S. Long Distance Corp.,
 
 928 F.Supp. 753 (N.D.Ill.1996), took the import of the savings clause to preserve state law claims alleging breach, of the same duties that were created under the Act. There, the plaintiff, on behalf of a purported class, alleged two claims under Illinois common law for fraud and tortious interference with contract and two statutory claims under Illinois’ consumer fraud statutes for the defendant's actions in switching the plaintiffs’ long distance service providers without their knowledge. The recent amendments to the Communications Act expressly prohibited carriers from changing a consumer’s selection of long distance service providers except in accordance with FCC regulations, and the defendants argued that by making this duty explicit in the Act, Congress confirmed its intent that claims of breach of this duty were to governed solely by federal law. The court disagreed: "Surely Congress would have been more explicit if it wished to do so, particularly in light of the savings clause. The savings clause leads this court to conclude that Congress intended the Federal Communications Act to supplement, and not completely preempt, the state law that applies in this instance.”
 
 Id.
 
 at 756;
 
 see also City of Ellens-burg v. King Videocable Co.,
 
 No. CY-93-3124AAM, 1993 WL 816526, at *4 (E.D.Wa. Dec. 20, 1993) (”[T]he federal causes are stated explicitly to parallel, not pre-empt, state causes of action. 47 U.S.C. § 414.”).
 

 [9]
 

 . Having found that, remand is proper, defendants’ motion to dismiss shall be denied as moot.