**BELL ATLANTIC MOBILE, INC., Plaintiff,**

v.

**The ZONING BOARD OF BUTLER TOWNSHIP, Defendant.**

**Kathleen P. Hawk, Consolidated Plaintiff,**

v.

**The Zoning Board Of Butler Township, Defendant.**

**No. CIV.A. 97–1918.**

United States District Court, W.D. Pennsylvania.

March 29, 2001.

William R. Sitting, Jr., Sitting, Cortese & Wratcher, Pittsburgh, PA, for Bell Atlantic Mobile.

Kathleen P. Hawk, Butler, PA, Pro se.

Bruno A. Muscatello and John M. Biondi, Stepanian & Muscatello, Butler, PA, for Zoning Hearing Board of Butler Tp.

## *MEMORANDUM*

LANCASTER, District Judge.

This action is a consolidation of two lawsuits involving issues related to plaintiff Bell Atlantic Mobile's ("BAM") desire to repeal portions of defendant the Zoning Board of Butler Township's ("Zoning Board") 1997 ruling. That ruling placed limitations on the future construction of a tower and related facilities for the operation of a wireless telecommunications network. BAM contends that the limitations violate, *inter alia,* the Federal Telecommunications Act of 1996, 47 U.S.C. § 332 (1996) ("FTA").

The court conducted a bench trial on February 12, 2001. For the reasons that follow, the court concludes that BAM's claims are not ripe for review, and Hawk's claims are not completely pre-empted by the FTA. Accordingly, the court dismisses BAM's claims and remands Hawk's claims to the Butler County Court of Common Pleas.

In accordance with Fed.R.Civ.P. 52, the following constitutes the findings by the court.

## I.  FINDINGS OF FACT

### A.  Procedural Background Facts

In the first lawsuit, BAM seeks declaratory relief to redress the alleged deprivation of rights based on, *inter alia*, violations of the Federal Telecommunications Act of 1996, 47 U.S.C. § 332 (1996) ("FTA") insofar as the Zoning Board's 1997 ruling placed inappropriate limitations on any future construction of towers and related telecommunications-related facilities.[1]  Pro se plaintiff Kathleen P. Hawk ("Hawk") eventually intervened in this first lawsuit.

The second lawsuit concerns Hawk's appeal to the Butler County Court of Common Pleas of the Zoning Board's decision to remove the conditions imposed in 1990 on the construction of BAM's tower facilities.  BAM intervened as a plaintiff in Hawk's appeal.  BAM then removed the Butler County case to federal court.

Thereafter, with BAM's case against the Zoning Board already before this court and Hawk's related Butler County case removed to this court, Hawk moved for the consolidation of both cases.  This court consolidated the cases into the present action and heard the parties' positions through a non-jury trial.

### B.  Substantive Background Facts

BAM is the lessee of property located on West McQuistion Road in Butler Township, Pennsylvania.  BAM holds a Federal Communications Commission ("FCC") license for the ownership, construction and operation of a wireless telecommunications network in a region, which includes BAM's leased property, designated as the Pennsylvania Service Area No. 6.  BAM's leased property is in close proximity to a residential neighborhood where Hawk lives.

In 1990, BAM applied for Zoning Board approval to construct a tower facility on the property.  The Zoning Board approved the application subject to 11 conditions, including conditions limiting total power output and collocation rights.  Because of litigation involving the granting of the application, BAM did not begin construction on the tower until 1994.

By 1997, the increased demand for wireless services created capacity problems for BAM and other carriers requesting to use the tower.  Accordingly, BAM applied to the Zoning Board to remove several of the 11 conditions that impeded BAM's ability to technologically upgrade its facilities to meet increased demand.  After hearing evidence on the issue, the Zoning Board agreed to remove the offending conditions.  The Zoning Board, however, added nine new conditions.  BAM finds fault with the following two new conditions:

I.   The expansion of the use must not result in any additional buildings or additions to buildings, other than those shown on the currently approved Land Development Plan.

II.  As the tower is located in a residential zone, next to a residential neighborhood, large dish type antennae and other visible additions to the tower structure, other than additional antennae and equipment similar in appearance to those al-

---

1.  Although BAM does not invoke the declaratory relief statute, 28 U.S.C. § 2201, its complaint clearly seeks declaratory relief.  Accordingly, the court will analyze BAM's claims as a declaratory judgment action.  *See*  *Coffin v. Malvern Fed. Sav. Bank,* 90 F.3d 851, 853 (3d Cir.1996) (analyzing a case as a declaratory judgment action even though the parties do not invoke the declaratory judgment statute).

ready on the tower, are not approved by this decision.

BAM contends that the Zoning Board's new conditions violate the FTA, the Omnibus Budget Reconciliation Act of 1993, 7 U.S.C. § 5623, and the zoning laws of the Commonwealth of Pennsylvania. The Zoning Board denies that its ruling and conditions violate any laws.

As discussed above, however, this case has another facet. Consolidated plaintiff Hawk, a resident in close proximity to the BAM tower and facilities, alleges that the removal of the 1990 conditions in 1997 was arbitrary, capricious, an abuse of discretion, and error of law. Hawk's primary concern rests upon her fears of the purported environmental effects of radio frequency emissions produced by BAM's facilities. On February 12, 2001, this court held a non-jury trial to address the parties' contentions.

## II. CONCLUSIONS OF LAW

### A. The Ripeness of BAM's Challenge to the Zoning Board's Conditions

■ Article III, section 2 of the United States Constitution requires an actual case or controversy for a federal court to have jurisdiction. One aspect of a determination of the existence of a case or controversy is whether the matter is ripe for resolution.[2]

The ripeness doctrine prevents " 'courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements.' " *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 147 (3d Cir.2000) (*quoting Artway v.*

*Attorney Gen. of N.J.*, 81 F.3d 1235, 1246–47 (3d Cir.1996)). To determine whether a claim is ripe, a court must weigh the hardship to the parties of withholding court consideration and the fitness of the issues for judicial review. *Planned Parenthood*, 220 F.3d at 148; *Pic–A–State*, 76 F.3d at 1298; *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462–63 (3d Cir.1994). In the declaratory judgment context, however, courts in the Third Circuit refine the ripeness test because declaratory judgments are typically sought before a completed injury has occurred. *Pic–A–State*, 76 F.3d at 1298. An example of such a situation is when a party seeks the preenforcement review of a statute or regulation. *Presbytery of N.J.*, 40 F.3d at 1463. This refining of the ripeness test involves a three-fold rubric: (1) the adversity of the parties' interests; (2) the probable conclusiveness of a judgment; and (3) the practical utility to the parties of rendering a judgment. *NE Hub Partners, L.P. v. CNG Trans. Corp.*, 239 F.3d 333, 343–44 (3d Cir.2001).

The first prong of the test, the adversity of the parties' interests, involves an analysis of whether the parties are so situated that they have adverse legal interests sufficient for there to be an actual controversy. *Presbytery of N.J.*, 40 F.3d at 1463. Although a party seeking review need not have suffered a completed harm to establish adversity of interest, it is necessary that there be a substantial threat of real harm and that the threat must remain real and immediate throughout the course of the litigation. *Id.* Interests are also suffi-

---

2. Note that the doctrine of ripeness, while related to the doctrine of standing, is entirely distinct. The Third Circuit explained that "[t]he concepts of standing and ripeness require related but distinct inquiries. 'The ripeness doctrine is often confused with the standing doctrine. Whereas ripeness is concerned

with when an action may be brought, standing focuses on who may bring a ripe action. Although the doctrines are analytically distinct, both have evolved from Article III's case or controversy requirement.' " *Pic–A–State Pa., Inc. v. Reno*, 76 F.3d 1294, 1298 n. 1 (3d Cir.1996) (citations omitted).

ciently adverse even if a government party has not enforced an ordinance or law against a party if the ordinance or law has caused the party to suffer economic harm and the party's further attempt to pursue its business would result in the risk of serious penalties. *Pic–A–State,* 76 F.3d at 1298–99. *See also NE Hub,* 239 F.3d at 343–44 (citing cases and noting that courts have found insufficient adversity for ripeness where the chance of the government defendant enforcing its laws against plaintiff is but a contingency).

The second prong of the ripeness test is the conclusiveness of a judgment which "is a short-hand term for whether a declaratory judgment definitively would decide the parties' rights." *NE Hub,* 239 F.3d at 344. In addition, the consideration of conclusiveness addresses the extent to which further factual development of the case would facilitate decision, so as to avoid the court issuing an advisory opinion, or whether the question presented is predominantly legal. *Id.*

The third prong of the ripeness test is the practical utility of the court issuing an opinion. That is, the court must consider " 'whether the parties' plans of action are likely to be affected by a declaratory judgment.' " *Pic–A–State,* 76 F.3d at 1300 (*quoting Step–Saver Data Sys., Inc. v. Wyse Tech.,* 912 F.2d 643, 649 n. 9 (3d Cir.1990)). The court should also consider the hardship to the parties of withholding judgment. *NE Hub,* 239 F.3d at 344–45.

Applying each of these prongs to the case at bar, it is readily apparent that BAM cannot meet all three essential prongs of the ripeness test.[3]

Based on the parties' pleadings and the evidence presented at trial, the court concludes that the parties' interests are insufficiently adverse to present an actual controversy and BAM's claims do not satisfy the first prong. For example, BAM has not applied for a permit to construct modifications to its tower and related facilities. Such a permit would undoubtedly detail exactly what it intends to construct and how, if at all, these plans may be adverse to the Zoning Board's position, i.e., its ordinance. In addition, the testimony from BAM's witnesses at trial addressed only issues of potential modifications of the tower facility. No testimony, however, concerned concrete, specific, imminent plans to modify the Butler township tower. Accordingly, the court cannot conclude that BAM's position is necessarily adverse to the Zoning Board's position, i.e., the two Zoning Board provisions stated in full above.

Applying the facts to the second prong of the ripeness test, conclusiveness, it is clear that BAM has not, and cannot, present enough concrete facts at this time to permit the court to avoid issuing an advisory opinion. That is, the court cannot rule on whether or not BAM's purported plans to modify their tower violate the Butler Township provisions because BAM has not presented enough specific facts about its plans and cannot say for certain that its plans for modification and expansion of the tower will ever occur. Accord-

---

**3.** The court assesses the propriety of the Zoning Board's two provisions on the basis of BAM making an "as applied" challenge to the township's regulation of property rights. An "as applied" challenge occurs if the court cannot determine the validity of the regulation simply by reading its terms but must consider the manner in which it has been administered. *Doe v. City of Butler, P.A.,* 892 F.2d 315, 325–26 (3d Cir.1989) (dissent) (*quoting* D. Mandelker, J. Gerald, E. Sullivan, *Federal Land Use Law* § 1.04 at 1–10). An "as applied" challenge is distinguished from a facial challenge in that with a facial challenge, a court can determine whether a regulation is valid simply by looking at its terms, not its particular application. *Id.*

ingly, if this court were to issue an opinion, the opinion would not conclusively decide the parties' rights. Rather, it would amount to an advisory opinion on a hypothetical set of facts that may or may not ever come to pass.[4]

Finally, applying the third prong of the ripeness test, practical utility, to the facts, it becomes apparent that this prong, unlike the first two, does weigh in favor of ripeness. For instance, the parties' plans of action would be affected by a declaratory judgment because if the court were to rule, BAM, for example, could move ahead and make more definite plans for modifying the tower without fear of offending the Zoning Board's two conditions. Similarly, a decision in the Zoning Board's favor would permit the township to move ahead with other planning issues secure in the knowledge that BAM or others could not construct telecommunications towers in contravention of the Zoning Board's wishes.

Based on the analysis of all three prongs, and keeping in mind that *all three* prongs of the ripeness test must weigh in favor of ripeness, the court concludes that BAM's challenge to the propriety of the Zoning Board's imposition of the two new conditions is not ripe.[5]

### B. BAM's Ability under Pennsylvania Law to Challenge Zoning Board's Conditions in the Future

While BAM's challenge to the Zoning Board's conditions is not ripe, BAM is concerned that it must challenge the Zoning Board's decision now or be precluded under Pennsylvania municipal law from challenging the decision in the future. The court, however, concludes that despite Pennsylvania law, the FTA's creation of a cause of action permits BAM to challenge the ruling in the future if or when it is ripe.

■ Pennsylvania law is well settled that a party that seeks a review of a zoning board's decision that was not immediately appealed by the party must establish that there has been a subsequent substantial change in conditions incident to the land itself before the party may challenge the ruling. *Filanowski v. Zoning Bd. of Adjustment*, 439 Pa. 360, 266 A.2d

---

**4.** The court further points out that if this were a facial challenge, the court would apply the three-prong ripeness test, *see, e.g., Pic–A–State*, 76 F.3d at 1298, and it is true that a more complete, definite factual record may not be necessary. *See, e.g. Presbytery of N.J.*, 40 F.3d at 1468 (noting that when predominantly legal questions are presented at declaratory judgment, the necessity of a full factual record is less important than in challenges to the specific application of a challenged law). Even if, however, this were a facial challenge and the court ruled that the issuance of an opinion could achieve conclusiveness, the failure of BAM to meet the first prong of the ripeness analysis still proves fatal to its case. *See, e.g., Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir.1995) (holding that only if *all* three elements of ripeness test are present, then case is ripe for adjudication).

**5.** The court notes that few courts have addressed the issue of ripeness of challenges to governmental regulation based on the FTA. The ones that have, however, have declined to review the plaintiff's challenge. *See Cellco P'ship v. Russell*, 1999 WL 556444 (4th Cir. July 30, 1999) (holding that issue of propriety of local ordinance under FTA was not ripe because cellular provider wishing to build a tower had not yet applied for a permit to do so); *City of Auburn v. U.S. West Communications, Inc.* 79 F.Supp.2d 1214, 1218 (W.D.Wash.1999) (holding that the issue of the propriety of local ordinances under the FTA was not ripe because cities had not attempted to enforce their ordinances yet); *APT Tampa/Orlando, Inc. v. Orange County*, 1997 U.S. Dist. LEXIS 22096 at *15 (M.D.Fla. Dec. 10, 1997)(holding that issue of propriety of local ordinance under FTA was not ripe because telecommunications provider had not applied for a license or variance).

670, 672 (1970). If the party has not established this, then the challenge to the zoning board decision is res judicata based on the earlier, unappealed zoning board decision. *Id. See also Gazebo v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 112 Pa.Cmwlth. 37, 535 A.2d 214, 218 (1987)(*citing Filanowski* for same propositions); *Mobil Oil Corp. v. Zoning Hearing Bd. of Tredyffrin Twp.,* 100 Pa. Cmwlth. 480, 515 A.2d 78, 80 (1986) (same); *Amoco Oil Co. v. Zoning Hearing Bd. of Middletown Twp.,* 76 Pa.Cmwlth. 35, 463 A.2d 103, 104 (1983)(same).

█ In contrast to Pennsylvania law, though, the FTA explicitly creates a cause of action for appeal of a final action of a state or local government without reference to any need for a change in conditions incident to the land. This cause of action arises at any time when the state's or local government's action is inconsistent with the limitations created by 47 U.S.C. § 332(c)(7)(B)(i)—(v) on their power for the regulation of the placement, construction, and modification of personal wireless service facilities. The relevant section of the FTA creating the cause of action states:

> (v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. § 332(c)(7)(B)(v).

Applying the plain text of the statute to BAM's situation, when or if BAM's claim becomes ripe through, for example, a final denial of a permit request, it is clear that BAM would have a cause of action under the FTA. Pennsylvania zoning law simply cannot abrogate this cause of action created by federal statute for the specific instance when the construction or modification of telecommunications towers is at issue. *See, e.g., Lucas v. Planning Bd. of the Town of LaGrange,* 7 F.Supp.2d 310, 321 (S.D.N.Y.1998) (collecting cases and stating that "[a]lthough the [Federal] Telecommunications Act does not completely preempt the authority of state and local governments to make decisions regarding the placement of wireless communications facilities within their borders, it quite clearly preempts any state regulations which conflict with its provisions." (Internal quotations and citations omitted)); *Paging, Inc. v. Board of Zoning Appeals for the County of Montgomery,* 957 F.Supp. 805, 808 (W.D.Va.1997) ("Thus in passing the [Federal Telecommunications] Act, Congress has explicitly held that under limited circumstances the federal interest in wireless communications takes priority over state zoning authority.").

### C. *The Issue of Preemption of Hawk's Claims Based on the FTA*

█ Having resolved the jurisdictional issues surrounding BAM's claims, the court now turns to Hawk's claims. Hawk brought claims against the Zoning Board in the Butler County Court of Common Pleas appealing the Zoning Board's removal of the 1990 restrictions on BAM. BAM removed these claims to federal court on the basis that BAM believes that Hawk's complaint concerns issues of federal law, primarily the FTA. For the reasons that follow, the court disagrees and remands Hawk's complaint to the Butler County Court of Common Pleas.

In a case that involves nondiverse parties, the district court is required to determine the existence or nonexistence of a federal question in a removed case when a motion to remand is made by one of the parties or on its own when not so raised.

When parties dispute whether subject matter jurisdiction exists on removal, defendant bears the burden to show that removal was proper. *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir.1995). For both removal and original jurisdiction, the federal question must appear on the face of the complaint unaided by the answer, counterclaim or petition for removal. *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936). If it does not appear there, "no statement in the petition for removal ... can supply that want." *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 464, 14 S.Ct. 654, 38 L.Ed. 511 (1894). Also, the fact that defendant advances a defense based on federal law does not create federal jurisdiction. *Krashna v. Oliver Realty, Inc.*, 895 F.2d 111, 113 (3d Cir.1990) ("It follows that an action may not be removed on the basis of a federal defense ...."). These principles are well established and are referred to as the "well-pleaded complaint rule." Moreover, the removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

One narrow exception to the well pleaded complaint rule is for matters that Congress has so completely preempted that any civil complaint that falls within the category is necessarily federal in charac-ter. *Lazorko v. Pennsylvania Hosp.*, 237 F.3d 242, 248 (3d Cir.2000). Complete preemption creates federal jurisdiction even though no federal question appears on the face of the complaint. *Id.* The Supreme Court, however, has narrowly interpreted the scope of the complete preemption doctrine. *Aronson v. Sprint Spectrum, L.P.*, 90 F.Supp.2d 662, 664 (W.D.Pa.2000). For example, since 1968, the Court has found complete preemption in only two instances: (1) claims alleging a breach of a collective bargaining agreement that fall under § 301 of the Labor Management Relations Act, 29 U.S.C. 185, and (2) claims for benefits or enforcement of rights under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B). *Id.*[6]

Recognizing this limited basis for complete preemption, the Third Circuit has fashioned a two-prong test to determine the applicability of the complete preemption doctrine. *Id.* at 665 (*citing Railway Labor Exs. Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988)). First, the purported preempting statute must contain civil enforcement provisions within the scope of which the plaintiff's state claim falls. *Id.* If this is satisfied, a district court then must determine whether there is a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law. *Id.*

With these legal principles in mind, the court assesses Hawk's claims for federal jurisdiction.

The court begins by assessing whether BAM has established that Hawk's complaint satisfies the well pleaded complaint rule. That is, whether a federal question

---

**6.** It should be understood that complete preemption contrasts with another form of preemption, substantive preemption, which displaces state law but does not, as a defense, confer federal jurisdiction. *Lazorko*, 237 F.3d at 248. Substantive preemption is not relevant to this court's consideration of its jurisdiction over Hawk's claims.

appears on the face of Hawk's Butler County complaint, unaided by the answer, counterclaim or petition for removal.

After closely reviewing Hawk's Butler County complaint, the court concludes that BAM has not, and cannot, establish that Hawk's complaint, on it face, states a federal question. Rather, Hawk's complaint involves the narrow issue of an appeal under Pennsylvania law of the Zoning Board's decision to remove the 1990 conditions on BAM's construction of telecommunications facilities. Hawk's complaint primarily argues that the Zoning Board's 1997 decision to remove the 1990 conditions is somehow res judicata based on a 1992 ruling of the Pennsylvania Commonwealth Court. This argument, of course, states no federal question.

■ While it is true that the consideration of the propriety of the Zoning Board's actions and BAM's defenses may involve the FTA and/or other federal law, plaintiff has not stated a cause of action based on a federal question. Note too that even "[a] substantial disputed federal question ... is insufficient by itself to confer jurisdiction. Thus, where Plaintiff's causes of action are created by state law, and no disputed question of federal law is a necessary element of one of those state law claims, there is no federal jurisdiction over the matter." *Bauchelle v. AT & T Corp.*, 989 F.Supp. 636, 641 (D.N.J.1997).

Next, the court addresses whether a narrow exception to the well pleaded complaint rule, complete preemption, applies to Hawk's claims based on the FTA. The court begins its analysis by applying the first prong to Hawk's claims. This prong involves determining whether the FTA contains civil enforcement provisions within the scope of which Hawk's state law claims fall.

As discussed, Hawk's state court claims involve an appeal from the Zoning Board's 1997 decision to remove the 1990 conditions for construction imposed on BAM. In her appeal to the Butler County Court of Common Pleas, Hawk argues primarily that the Zoning Board's 1997 decision is res judicata. She does not assert any federal question or causes of action.

Comparing this state law cause of action to the FTA, it is clear that the FTA contains no civil enforcement provisions that subsume Hawk's state law claims. That is, nothing in the FTA addresses appeals from zoning boards in these circumstances. In fact, the parties agree that the relevant FTA provisions for this case are 47 U.S.C. § 332(c)(7)(A)—(B), provisions regarding the interplay of state, local, and federal government authority for regulation of the placement, construction, and modification of personal wireless service facilities. Nothing in those provisions creates causes of action in federal court for appeals from local zoning boards. Accordingly, the first prong of the complete preemption test weighs against the FTA having complete preemption.

Under the two-prong complete preemption test, if the first prong is not satisfied, the court need not go further with its analysis. *See Aronson,* 90 F.Supp.2d at 665 (noting that a court should only move to the second step of the two-prong complete preemption test if the first prong is satisfied). Nonetheless, the court will undertake a brief analysis of the second prong because the case law addressing the issue is so definitive.

The district courts in this circuit have addressed the second prong of the complete preemption argument as it relates to the Federal Communications Act [7] on mul-

---

7. Throughout this opinion, the court has ad-

dressed issues concerning the Federal Tele-

tiple occasions and have uniformly held that Congressional intent for removal, and therefore complete preemption, does not exist. *See Aronson,* 90 F.Supp.2d at 667–668; *Bauchelle,* 989 F.Supp. at 646; *Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc.,* 958 F.Supp. 947, 958 (D.Del.1997); *DeCastro v. AWACS, Inc.,* 935 F.Supp. 541, 551–52 (D.N.J.1996); *Weinberg v. Sprint Corp.,* 165 F.R.D. 431, 439–40 (D.N.J.1996). *Accord Guglielmo v. WorldCom, Inc.,* 2000 WL 1507426 at *4 (D.N.H. July 27, 2000)(collecting cases from many jurisdictions noting that the Act does not satisfy the second prong of the complete preemption test). For example, courts note no textual basis for removal and nothing in the Act's legislative history showing Congressional intent for removal. *See, e.g. Aronson,* 90 F.Supp.2d at 668. Moreover, the saving clause of the Act, section 414, provides that "[n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are **in addition to such remedies.**" *Id.* (emphasis supplied by court in *Aronson* case). Consequently, the claims in the case at bar based on the FTA do not meet the second prong of the complete preemption test.

## III. *CONCLUSION*

Accordingly, for the foregoing reasons, the court dismisses BAM's claims for lack of ripeness. The court also remands Hawk's claims to the Butler County Court of Common Pleas.

communications Act of 1996 ("FTA"). It should be understood that the FTA is an amendment to the Federal Communications Act of 1934 ("Act"), 47 U.S.C. § 151 *et seq.* The FTA is codified at scattered sections throughout title 47. *See* Thomas G. Krattenmaker, *The Telecommunications Act of 1996,* 29 Conn. L.Rev. 123, n. 1 (1996). The cases in this discussion of complete preemption address different sections of the Act, not necessarily the FTA. This distinction, however, is of no import because the FTA is, of course, part of the larger, now amended, Act and especial-

ly since the second prong analysis involves an examination of the entire statute for Congressional intent for removal. *See Kapton v. Bell Atl. NYNEX Mobile,* 700 A.2d 581, 586–87 (Pa.Commw.Ct.1997) (referring in dicta in dissenting opinion that preemption analysis of FTA's section 332 includes reference to other portions of the Act including the savings clause). Moreover, all of the cases cited for this proposition were published after the amendment of the Act, so the courts were aware of the 1996 amendments.